## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KEVIN R. STEWART

       Plaintiff,

    v.

UNITED PARCEL SERVICE, INC.
    *Serve Resident Agent:*
    *Corporation Service Company*
    *2900 SW Wanamaker Drive, Suite 204*
    *Topeka, KS 66614*

       Defendant.

Case No.
Div.

## COMPLAINT

Plaintiff Kevin R. Stewart, by and through his counsel of record, for his Complaint, alleges and states as follows:

## PARTIES

1.    Plaintiff Kevin R. Stewart ("Plaintiff") is a resident of the State of Kansas.

2.    Defendant United Parcel Services, Inc ("UPS") is a corporation organized under the laws of the State of Ohio, licensed to do business in Kansas and that regularly transacts business in Kansas. This Defendant can be served via its Kansas Resident Agent, Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614.

3.    All of the acts conduct or omissions by Defendant UPS were performed by its agents, representatives, managers, and employees while in the course and scope of their agency or employment.

## NATURE OF ACTION

4.    Plaintiff is a current employee of UPS at the UPS distribution center located at 223 N. James Street, Kansas City, Kansas 66118. Plaintiff seeks relief for race discrimination, hostile

work environment, and retaliation he has suffered or endured with regard to the terms and conditions of his employment with UPS following his filings of work-related complaints and grievances pertaining to harassment and discrimination in the work place, as more fully set forth herein.

5.       Defendant's discrimination, hostile work environment, and retaliation violated Plaintiff's rights to engage in protected activity, as provided under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e, *et seq.* (the "Act").

6.       Plaintiff seeks injunction and declaratory relief, actual and compensatory damages, punitive damages, and reasonable attorneys' fees and costs as remedies for Defendant's violation of his rights.

## JURISDICTION AND VENUE

7.       This Court has original jurisdiction pursuant to 28 U.S. C. § 1331 because Plaintiff's claims are brought pursuant to federal law, more specifically, under the Act. Moreover, this Court has supplemental jurisdiction over Plaintiff's Kansas tort claims, pursuant to 28 U.S.C. § 1367(a).

8.       Venue is proper in this Court pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. § 1391 because: (1) Defendant UPS transacts business in and maintains a place of business within this District; and (2) the unlawful employment practices alleged herein occurred within this District.

9.       At all times relevant herein, Defendant UPS had over 500 employees and was/is therefore an "employer" within the meaning of the Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     As a result of the unlawful employment practices alleged here, on May 18, 2020 Plaintiff timely filed a Charge of "Retaliation, discrimination and Harassment" with the Equal Employment Opportunity Commission ("EEOC"), which is attached here as *Exhibit A*.

11.     In his Charge, Plaintiff alleged that his employer UPS retaliated, discriminated, and harassed him throughout, but in particular as recent as January 8, 14 2020 as well as April 13, 2020. Specifically, on multiple occasions, Plaintiff alleges that UPS manager Mike Bayer, Kelly Ceesay and others routinely discriminated, harassed, and retaliated against him for engaging in protected activity under the law and contract of employment.

12.     Plaintiff's Charge culminated into a "Notice of Right to Sue" letter issued and mailed by the EEOC on June 19, 2020 and received by Plaintiff on June 23, 2020.  The Notice of Right to Sue letter is attached here as *Exhibit B*.

13.     Plaintiff is filing this suit within 90 days of Plaintiff's receipt of the Notice of Right to Sue letter, and therefore this suit is timely filed.

14.     Plaintiff exhausted all administrative remedies prior to filing this suit.

15.     Whenever relevant, Defendant UPS's conduct herein constituted a continuing violation of Plaintiff's protected rights stated herein.

## FACTUAL BASIS

16.     Plaintiff incorporates all of the above paragraphs of this Complaint as though fully set forth here.

17.     Plaintiff is a 53 years old Black man.

18.     Plaintiff is a part-time employee of UPS and has been employed by UPS in this capacity for over 32 years.

3

19.     At all times during his employment with UPS, Plaintiff has more than adequately performed his employment duties. He received excellent performance reviews throughout.

20.     At all times relevant to this action, Mike Bayer was a full time supervisor and a member of management at UPS; Kelly Ceesay was a pre-load manager and a member of management at UPS; Tammy Tombs and Erik Day were Human Resources agents and members of management at UPS; and Doug O'Million, Jason Slaughman, and Jayden Williams were also members of management at UPS.

21.     Mike Bayer had supervisory authority over Plaintiff, and at all relevant times made decisions affecting Plaintiff's term and conditions of employment.

22.     Kelly Ceesay had supervisory authority over Plaintiff, and at all relevant times made decisions affecting Plaintiff's term and conditions of employment.

23.     Jayden Williams had supervisory authority over Plaintiff, and at all relevant times made decisions affecting Plaintiff's term and conditions of employment.

24.     Plaintiff has always been a part-time employee at UPS, working on average approximately 30 to 36 hours per week.

25.     Plaintiff initially started as a "loader" and then was promoted to a "sorter" position, a function he performed for approximately 12 years.

26.     In or about 2015, Plaintiff placed a bid for a position as a "damage clerk." Although he never received an official response to his 2015 bid, Plaintiff in fact worked in that position as a "damage clerk" for approximately 4 ½ years.

27.     At some point in late 2019, while working as a "damage clerk", Defendant UPS recategorized the "damage clerk" position as a "full-time" position; but refused to designate

4

Plaintiff as a full-time employee, even though Plaintiff submitted the necessary requests and expressed a desire to become a full time employee.

28.     Full-time employees received better and more comprehensive benefits, higher hourly rates, and other privileges as compared to part-time employees.

29.     Even though Plaintiff worked substantial amounts of hours, routinely equaling or surpassing the full-time hourly requirements, Defendant UPS capriciously refused Plaintiff the opportunity to become a full-time employee.

30.     Specifically, in late December 2019, after having worked as a "damage clerk" for approximately 4 ½ years, Plaintiff was informed that he would be removed from that position, and that the position would be assigned to someone else, who had never bid for the job.

31.     Member of management, Kelly Ceesay, went as far as inducing a co-worker to lie and represent that he had in fact bid for the position, when records clearly show that such employee had not done so.

32.     When confronted with this fact, member of management Kelly Ceesay dismissed it and informed Plaintiff that he would nonetheless be removed from that position.

33.     At or about the same time, Plaintiff began receiving hostile treatment from Mike Bayer.

34.     Consequently, Plaintiff on multiple occasions filed grievances with his union representative as well as with Defendant UPS, seeking to be categorized as a full-time employee. In particular, Plaintiff submitted grievances against Mike Bayer as well as Kelly Ceesay, who were constantly denying him, without justification, an opportunity to become a full-time employee.

35.     As a result of his previous complaint and grievance filings, Defendant UPS, by and through its agents Mike Bayer and Kelly Ceesay, began or increased the intensity of a campaign of harassment and intimidation against Plaintiff.

36.     Plaintiff witnessed and experienced a continuing pattern of harassment by Mike Bayer and Kelly Ceesay, which created an intimidating, offensive, and hostile work environment.

37.     For example, on January 14, 2020, Plaintiff met with members of management, specifically Terry Johnson to discuss the grievances Plaintiff had filed against Mike Bayer and Kelly Ceesay, and the manner in which he was being treated.  Defendant UPS, by and through its agents, took no action.

38.     On January 14, 2020, the employee in question again confessed to Plaintiff that he had never bid for the position, but that he was forced to lie against Plaintiff, to appease the demands of member of management Kelly Ceesay and Mike Bayer.

39.     There were no work performance issues that would have prevented Plaintiff from ebing considered for a full time position and to do the job, he had done for 4 ½ years.

40.     On that same day, Plaintiff submitted another grievance to UPS against member of management Kelly Ceesay, for her role in getting the employee to lie against Plaintiff's interests. Defendant UPS ignored the grievance.  On that same day, Mike Bayer rudely confronted Plaintiff over the grievance he had just submitted and made threats about Plaintiff's employment status with UPS. Plaintiff immediately informed Morgan Toliver, another member of management, and the direct supervisor to Kelly Ceesay, about the confrontation with Mike Mayer.  Again, Defendant UPS did nothing.

41.     On January 20, 2020 because no action was taken by Defendant UPS, Plaintiff submitted an official grievance against Mike Bayer for the previous confrontation, as well as for continued harassment by the same against Plaintiff.

42.     Despite his bid for the "damage clerk" position, and the fact that Plaintiff had worked in that position for 4 ½ years, Defendant UPS removed Plaintiff from that position and forced him to work in different departments, generally assigned to employee with significant less seniority than Plaintiff.

43.     On March 20, 2020 Plaintiff met with Human resources agent Tammy Tombs to discuss his grievances and the hostile work environment he was being subjected to by Mike Bayer and Kelly Ceesay. Defendant UPS did nothing.

44.     On that same day, Plaintiff noticed that his time had been tampered with.

45.     On April 15, 2020, Plaintiff again noticed that his time had been tampered with.  In fact, from April 13, 2020 to April 27, 2020 Plaintiff was unable to clock in or out like any other employee.

46.     During this time, Plaintiff was forced to rely on other member of management to clock him in and out manually. Plaintiff was simply informed, without an explanation, that his password to time in and out was changed. At the end of April, his clock in/out privileges were restored.

47.     On or about April 24, 2020, Plaintiff filed another grievance against Kelly Ceesay, for having removed him from his bid "damage clerk" position.  Defendant UPS did nothing about it.

48.     Plaintiff experienced a continuing pattern of retaliation by Mike Bayer, Kelly Ceesay, and Jason Williams, which were intended to force Plaintiff to quit.

49.     For example, after being capriciously removed from his bid "damage clerk" position, Plaintiff, based on his seniority, began driving PEDO carts in a different department. Plaintiff was qualified and trained to do so.

50.     Nevertheless, on or about May 13, 2020, Mike Bayer confronted Plaintiff, and without explanation, told Plaintiff he could not drive the PEDO carts. Plaintiff protested and told Mike Bayer that, based on his seniority, training and expertise, he was qualified and entitled to drive the PEDO carts.

51.     Mike Bayer then threatened Plaintiff by telling him that if he caught Plaintiff driving a PEDO cart, that Plaintiff would be summarily terminated; and that if Plaintiff was not happy, that "he could go and file a grievance."

52.     There were no work performance issues that would have prevented Plaintiff from driving the PEDO cart.

53.     On May 14, 2020, while doing safety runs, Plaintiff was asked by another member of management to drive a PEDO cart once he Plaintiff completed the safety run, because another employee had not reported for work. Plaintiff did as he was told.

54.     Moments later, member of management Jayden Williams saw Plaintiff driving the PEDO cart and berated him and told him to stop doing so immediately. When Plaintiff informed Mr. Williams that he had been instructed by another member of management to drive the PEDO cart, Mr. Williams proceeded to yell profanities at Plaintiff and again threatened him with termination if he did not stop driving the PEDO cart.

55.     As a result of this confrontation, Mike Bayer immediately wrote Plaintiff up for failing to follow supervisor's instructions, even though Plaintiff had in fact been following another supervisor's specific instructions to drive the PEDO cart.

56.     Mike Bayer followed up by introducing false and misleading information and documents into Plaintiff's file about this incident. As a result, Plaintiff met with human resources agents and also filed a complaint with the ethics hotline.  Defendant UPS did nothing.

57.     Plaintiff, despite his seniority, training, and qualifications, was not allowed to drive the PEDO carts. Plaintiff was later informed that Mike Bayer and Kelly Ceesay had made the decision to preclude him from driving the PEDO carts.

58.     Plaintiff was the victim of race discrimination by Mike Bayer and Kelly Ceesay.

59.     For example, even though he was not allowed to drive the PEDO carts without any justification or explanation, his driving privileges were then given to associates with much less seniority than Plaintiff, who were also White.

60.     These other White associates were routinely permitted to drive the PEDO carts, while Plaintiff was not allowed to do so.

61.     Plaintiff was routinely written-up for pretextual issues, while these other White associates were not bothered, and were left free to go about their work.

62.     On or about June 5, 2020, Kelly Ceesay was freely letting others know that she though Plaintiff "was not beneficial to the company," and was hopping to send Plaintiff to do unloads, presumably in hopes that Plaintiff would "just quit."

63.     At some point during this entire ordeal, Jayden Williams approached Plaintiff and apologized to him and stated that he "did not want any part of this" and that he did not care if Plaintiff drove a PEDO cart.

64.     Nevertheless, the discrimination, harassment, and retaliation on the part of members of management Mark Bayer and Kelly Ceesay continued.

9

65.     On or about May 28, 2020, Plaintiff sent an email to corporate Headquarters in Atlanta, GA complaining of the treatment he was receiving and the hostile environment he was subjected to.  Defendant UPS did nothing.

66.     Throughout this this time, Plaintiff was told by Mike Bayer and Kelly Ceesay that they (Mike and Kelly and/or the company) "could do whatever they want."

67.     On August 3, 2020, even though none of Plaintiff's grievances or complaints had received proper attention from Defendant UPS, Mike Bayer was moved away to a different department.

## COUNT I – RACE DISCRIMINATION

68.     Plaintiff incorporates all of the above paragraphs of this Complaint as though fully set forth here.

69.     Plaintiff was subject to adverse treatment and discrimination by Defendant UPS on the basis of his race.

70.     Plaintiff was treated differently than other similarly situated CaucasiansWhite employees, on the basis of Plaintiff's race.

71.     Defendant UPS's actions against Plaintiff, constitute race discrimination in violation of the Act, including by disciplining Plaintiff and not disciplining similarly situated Caucasian employees; harassing Plaintiff because of his race; giving preferential treatment to Caucasian employees with much less seniority than Plaintiff, to the detriment of Plaintiff; ignoring and failing to investigate Plaintiff's complaints of harassment and discrimination; failing to protect Plaintiff from harassment and discrimination on the basis of his race; threatening to terminate Plaintiff because of his race while not threatening to terminate similarly situated Caucasian

employees; and manufacturing false, pretextual reasons for the adverse actions taken or threatened against Plaintiff.

72.     The discriminatory actions of UPS detrimentally affected Plaintiff in the terms and conditions of his employment with UPS.

73.     Defendant UPS knew, or should have known, of the race discrimination and harassment against Plaintiff.

74.     Defendant UPS failed to take prompt and appropriate corrective action to end the race discrimination against Plaintiff.

75.     Defendant UPS failed to make a good faith effort to enforce policies and procedures designed to prevent race discrimination and to protect Plaintiff from race discrimination.

76.     As a direct, legal, and proximate result of this discrimination, harassment, and hostility, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be determined at trial.

77.     Defendant UPS's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's right to be free from discrimination and harassment that created an intimidating, offensive, and hostile work environment.

78.     Plaintiff is entitled to his reasonable attorneys' fees and costs of this suit.

## COUNT II – HARASSMENT AND HOSTILE WORK ENVIRONMENT

79.     Plaintiff incorporates all of the above paragraphs of this Complaint as though fully set forth here.

80.     Plaintiff suffered hostile work environment and harassment as a result of Byers, Kelly Ceesay, and Jason Williams' continuing pattern of severe and pervasive conduct that directly

and negatively affected Plaintiff, altered the conditions of Plaintiff's employment, and created an abusive work environment.

81.     Mike Byers, Kelly Ceesay, and Jason Williams' continuing pattern of severe and pervasive conduct created a hostile work environment for Plaintiff, since he was extremely distressed working in an environment where he was verbally abused and harassed.

82.     Plaintiff was subject to unwelcome harassment which created an intimidating, hostile, and offensive work environment, which led him to complain to UPS management, human resources, and union officials about Mike Byers, Kelly Ceesay, and Jason Williams' offensive conduct.

83.     Further, Mike Byers, Kelly Ceesay, and Jason Williams' offensive harassment permeated the workplace with discriminatory intimidation, ridicule, and insults that altered Plaintiff's work environment, so severe and pervasive it created a work environment that a reasonable person would consider intimidating, hostile, and/or abusive.

84.     Top officials and human resources employees of UPS were aware, or at the least should have known, of the continuing harassment by Mike Byers and Kelly Ceesay, as Plaintiff provided information sufficient to raise a probability of harassment in the mind of a reasonable employer.

85.     The harassment was so pervasive and open that a reasonable employer would have been aware of it, and in fact, Mike Byers, a member of management for UPS, was himself complicit in the abusive harassment conduct.

86.     Yet, Defendant UPS failed to take reasonable steps to prevent and/or promptly correct the harassing behavior, and instead allowed a company-wide policy and practice of

discrimination in the workplace. After informed in writing of Mike Byers and Kelly Ceesay's harassing behavior, Defendant UPS did not take any action to correct the behavior.

87.     Defendant UPS did not exercise reasonable care to prevent harassment in the workplace.

88.     Plaintiff took reasonable advantage of the preventive and corrective opportunities available to cease Mike Byers, and Kelly Ceesay's pattern of harassment and UPS's allowance of harassment.

89.     As a direct, legal, and proximate result of this discrimination, harassment, and hostility, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be determined at trial.

90.     Defendant UPS's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's right to be free from discrimination and harassment that created an intimidating, offensive, and hostile work environment.

91.     Plaintiff is entitled to his reasonable attorneys' fees and costs of this suit.

## COUNT III – RETALIATION

92.     Plaintiff incorporates all of the above paragraphs of this Complaint as though fully set forth here.

93.     Plaintiff was illegally retaliated against for participating in the protected activity of opposing harassment, hostile work environment, and discrimination by Defendant UPS who took materially adverse action against Plaintiff as a direct result of Plaintiff's challenge to these actions and conduct.

94.     On numerous occasions, Plaintiff made complaints, filed grievances, and alerted UPS about the harassment, work place discrimination, and retaliation, but to no avail.

13

95.     As a result of Plaintiff's filed grievances and complaints about the discrimination, hostile work environment, Defendant UPS, by and through Mike Bayer and Kelly Ceesay, took materially adverse actions against Plaintiff, including impeding him to obtain a full-time position, forcing him from a job he had done competently for 4 ½ years, capriciously prohibiting from other jobs that he was qualified, trained and based on his seniority entitled to have, and threatening with termination predicated on false and misleading information fabricated by Mike Bayer and Kelly Ceesay, with the intent to drive Plaintiff away.

96.     There was a direct causal link between Plaintiff's desire to become a full-time employee and his filing of grievances and complaints against his detractors Mike Bayer and Kelly Ceesay, and Plaintiff being threatened by Mike Bayer and Kelly Ceesay.  Prior to bidding for a full-time position and filing grievances and complaints against Mike Bayer and Kelly Ceesay, Plaintiff had not received any complaints about his work from Mike Bayer, Kelly Ceesay or any other member of management at UPS.  Prior to the filing of grievances, Plaintiff was well compensated for his ongoing work, asked to participate in the training of younger associates, made a team member of the safety group, and respected for his years of service to UPS.

97.     Mike Bayer, and Kelly Ceesay's adverse action constitute retaliatory harassment, and their actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII, just as Plaintiff was deterred.

98.     Plaintiff communicated to many levels of Defendant UPS's management structure, about Mike Bayer and Kelly Ceesay's harassment, and also filed formal grievances and complaints with UPS's Human Resources department in opposition to Mike Bayer and Kelly Ceesay's unlawful, discriminatory employment practices.

14

99.     After Plaintiff made complaints of Mike Bayer and Kelly Ceesay's harassment and answered all the questions posed to him by members of management or Human Resources at UPS, Defendant UPS's managers Mark Bayer and Kelly Ceesay retaliated further against Plaintiff by engaging in materially adverse employment actions including threatening his employment status, tampering with his password and clock in/out credentials, spreading rumors about Plaintiff, and discussing Plaintiff's complaints with other UPS officials and employees and calling him a liar.

100.    There was a direct causal link between Plaintiff complaining about Mike Bayer and Kelly Ceesay's harassment leading to investigations and the retaliation Plaintiff faced which created an even greater workplace hostility that was so intolerable and created with the sole purpose of driving Plaintiff away or forcing him to quit.

101.    As a direct, legal, and proximate result of this retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

102.    Defendant UPS's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation for engaging in protective activity under the Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant UPS and requests the following relief from this Court: (a) for a declaration that Defendant UPS's actions and practices alleged herein were and are unlawful; (b) for actual damages sustained by Plaintiff by way of wage and benefits loss due to him in an amount exceeding $75,000.00; (c) for compensatory damages for Plaintiff's emotional pain and suffering in an amount to be proven at trial; (d) for punitive damages in an amount to be determined at trial; (e) for an order enjoining Defendant UPS from engaging in the unlawful acts complained of herein; (f) for reasonable attorneys' fees and costs of

this lawsuit pursuant to 42 U.S.C. §2000e-5(k) and other applicable laws; and (g) for other such and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which Plaintiff has a right to a jury trial.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas as the place of trial in this case.

Dated: September 17, 2020                          Respectfully submitted,

                                                  _____

                                                  Marcos A. Barbosa          KS #22015
                                                  **THE LAW OFFICES OF**
                                                  **MARCOS A. BARBOSA, LLC**
                                                  4707 Roe Pkwy, Suite 100
                                                  Roeland Park, KS 66205
                                                  Telephone:    (816) 499-8800
                                                  Facsimile:    (816) 499-8801
                                                  marcos.barbosa@mablawkc.com
                                                  ATTORNEY FOR PLAINTIFF

16