## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KEVIN R. STEWART,                                )
                                                 )
             Plaintiff,                )
                                                 )
v.                                               )   Case No. 20-2461-JAR-GEB
                                                 )
UNITED PARCEL SERVICE, INC.                      )
                                                 )
             Defendant.                )
                                                 )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Sanctions, ("Motion"). **(ECF No. 110)**. It has been fully briefed, and the Court reviewed Defendant's Motion, Plaintiff's response in opposition and request for attorney fees **(ECF No. 114),** and Defendant's reply **(ECF No. 115)**. The Court also heard limited oral argument on December 18, 2022, and reviewed Defendant's supplemental authority submitted on December 20, 2022. **(ECF No. 118).** After full consideration of the parties' briefs, the Court **DENIES** Defendant's Motion and **DENIES** Plaintiff's request for attorney fees for the reasons set forth below.

## I. Background[1]

This action stems from Plaintiff's employment with Defendant and his allegations of race discrimination, harassment, hostile work environment, retaliation, and breach of a

---

[1] The information recited in this section is taken from the pleadings and from the Motion for Sanctions and related briefs. This background information should not be construed as judicial findings or factual determinations.

collective bargaining agreement. Plaintiff is an African American man who was hired by Defendant in 1987 in a part-time capacity, and he continues to work for Defendant as of the time the pretrial order was entered in this case.

Plaintiff asserts he began seeking a full-time role with Defendant in 2015. He further contends, despite working the requisite number of hours which would qualify him as a full-time employee, Defendant refused to categorize him as a full-time employee, manipulated the bidding process, and either did not permit him to apply as a full-time employee due to his race, or encouraged employees with more seniority than him to apply for eligible full-time positions. Plaintiff also asserts this resulted in the loss of more comprehensive benefits, higher compensation and other work-related privileges.

Plaintiff further alleges after being removed from his job as "damage clerk" in 2019, he complained to management and, eventually, his union. Due to lodging these complaints, Plaintiff contends he suffered hostility, harassment and intimidation from members of Defendant's management team due to both his race, and as a result of his complaints. And, as he continued to submit additional grievances regarding management's behavior, the hostility, harassment and retaliation against him increased. Plaintiff avers neither the union nor Defendant ever addressed his grievances.

He brought suit against Defendant, filing this case on September 17, 2020. Plaintiff's claims are brought under 42 U.S.C. § 2000e, *et seq.*, Labor Management Relations Act, § 301, and the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Defendant generally denies any wrongdoing, and, among other defenses, argues its actions were based on legitimate, non-discriminatory, and non-retaliatory business purposes.

## II.     <u>Procedural posture of this case</u>

Both parties in this matter have been represented by multiple attorneys, which has, in some ways, contributed to the slow progress of this case and multiple modifications to the scheduling order.  This Court first entered a scheduling order on March 17, 2021, which set a discovery deadline of September 1, 2021.[2] In May 2021, Plaintiff hired new counsel who filed a motion to amend the scheduling order.[3] The Court granted Plaintiff's motion, and the Court entered a new schedule with a discovery deadline of January 31, 2022.[4] Then, in November 2021, Defendant added new counsel, and the parties filed a joint motion to amend the scheduling order a second time.[5] The joint motion was granted, and the Court entered an order setting a new discovery deadline of May 25, 2022.[6]  Plaintiff's counsel then withdrew on March 29, 2022.[7] Plaintiff went nearly five months without representation, and the Court convened the parties for a scheduling conference on April 27, 2022 to determine Plaintiff's intentions insofar as counsel.[8]  The Court gave Plaintiff until June 8, 2022 to secure counsel and stayed all deadlines until a ruling was issued on the Defendant's partial motion to dismiss.[9]  On June 8, 2022, Plaintiff sought appointment of counsel and another scheduling conference was set for August 16, 2022.[10] During the June

---

[2] ECF No. 21.
[3] ECF Nos. 29, 30, 34.
[4] ECF No. 41.
[5] ECF Nos. 52, 53.
[6] ECF No. 54.
[7] ECF No. 75.
[8] ECF No. 76.
[9] ECF No. 78.
[10] ECF Nos. 80, 87.

8, 2022, hearing, the Court reserved ruling on Plaintiff's motion for appointment of counsel pending a ruling on the Defendant's motion to dismiss.[11]   That ruling came a week later when the District Judge denied Defendant's motion.[12]   The Court also denied Plaintiff's motion for appointment of counsel on July 12, 2022.[13]   Plaintiff's current counsel entered her appearance in the case on August 15, 2022.[14]   The Court held a scheduling conference on August 16, 2022, which resulted in a second revised scheduling order, and another new discovery deadline of November 30, 2022.[15] The court docket reflects discovery in the case resumed approximately September 21, 2022.[16] Shortly after entering the second revised scheduling order, one of Defendant's attorneys withdrew on October 7, 2022, and new counsel entered his appearance on November 8, 2022.[17] On November 15, 2022, the Court convened the parties for a status conference and, over Defendant's objection, extended the discovery deadline one week, to December 7, 2022, [18] after which Defendants formally requested sanctions be issued against Plaintiff for late supplementation of his Fed. R. Civ. P. 26 disclosures.[19]

---

[11] ECF No. 82.
[12] ECF No. 83.
[13] ECF No. 84.
[14] ECF No. 88.
[15] ECF No. 90.
[16] ECF No. 96.
[17] ECF Nos. 93, 104.
[18] ECF No. 109.
[19] ECF No. 110.

Plaintiff's deposition was initially scheduled for August 30, 2021.[20] For reasons unknown to the Court, the deposition was rescheduled for October 25, 2022.[21] Again, the deposition did not occur, and it was again rescheduled for November 11, 2022.[22]

The scheduling order entered on March 17, 2021, required the parties to supplement their Fed. R. Civ. P. 26 disclosures 40 days prior to the close of discovery.[23] The scheduling order also warned:

> The supplemental disclosures served 40 days before the deadline for completion of all discovery must identify all witnesses and exhibits that probably or even might be used at trial. The opposing party and counsel should be placed in a realistic position to make judgments about whether to take a particular deposition or pursue follow-up "written" discovery before the time allowed for discovery expires. Should anything be included in the final disclosures under Fed. R. Civ. P. 26(a)(3) that has not previously appeared in the initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto, the witness or exhibit probably will be excluded from offering any testimony under Fed. R. Civ. P. 37(c)(1).[24]

Despite the numerous amendments to the scheduling order, the provisions regarding Fed. R. Civ. P. 26 disclosures have governed discovery throughout the life of this case.[25]

During his deposition on November 11, 2022, Plaintiff identified witnesses and exhibits not previously disclosed, and then supplemented his Fed. R. Civ. P. 26 disclosures promptly thereafter, on November 13, 2022, ("supplemental disclosures"). The supplemental disclosures were made 23 days after the parties' deadline for final supplementation of their initial disclosures, and, at the time the disclosures were made, 17

---

[20] ECF No. 39.
[21] ECF No. 95.
[22] ECF No. 101.
[23] ECF No. 21.
[24] *Id.*
[25] *See* ECF Nos. 41, 90.

days before the close of discovery.[26] The November 13, 2022, supplemental disclosures are at issue in Defendant's pending Motion.[27]

The Court notes it was first made aware of the information disclosed by Plaintiff during his deposition and the late supplemental disclosures at the status conference on November 14, 2022. After being fully advised, the Court instructed the parties confer to determine if they could coordinate a time to re-depose Plaintiff by a time-certain or otherwise cure the late disclosures through affidavits or Zoom depositions.  The Court also extended the discovery deadline to December 7, 2022, and alerted the parties there was still a bit of time for discovery and could likely extend discovery to late December if counsel needed additional time.[28] Finally, the Court requested the parties contact chambers prior to filing any motions in order to discuss alternatives for curing the late disclosure. It is clear there was no conferral, no attempt to cure, and Defendant did not contact the Court to request additional time for discovery.

The Court held a pretrial conference on December 19, 2022, and heard limited argument regarding the parties' positions on the Defendant's pending Motion.[29] However, at no time during the pretrial conference, despite having ten months until trial and the Court specifically inquiring what additional discovery Defendant needed regarding the supplemental disclosures, did Defendant take the opportunity to specify what additional discovery it wanted to complete or ask that discovery be extended.  To the contrary, in response to the Court's inquiry regarding what additional discovery it needed, Defendant

---

[26] ECF No. 107.
[27] ECF No. 110.
[28] ECF No. 109.
[29] ECF No. 116.

argued why its Motion should be granted, and stated it did not have time to determine what
additional discovery was needed. The Court subsequently entered a pretrial order.[30]

## III.   Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve
a discovery dispute" unless the moving party has "conferred or has made reasonable effort
to confer with opposing counsel" before filing a motion. Rule 37.2 goes on to clarify that
an email does not satisfy the requirement the parties make a "reasonable effort to confer."
In addition to Rule 37.2, the Court directed the parties to confer regarding the supplemental
disclosures during the status conference on November 14, 2022.

Defendant's Motion contains a footnote that reflects its purported compliance with
D. Kan. Rule 37.2, which consists of an email sent to Plaintiff's counsel the same day its
Motion was filed.[31] On December 19, 2022, despite briefing on the Defendant's Motion
being closed, Defendant submitted a copy of the email exchange between counsel to the
Court which reflects their conferral efforts. Frankly, the email exchange fails to support the
assertion the parties made reasonable efforts to confer.  Defendant's counsel sent an email
to Plaintiff's counsel at 12:40 PM on November 18, 2022, the same day it filed the Motion
at issue. The email is a statement from counsel expressing her intent to seek to have the
newly identified witnesses and documents stricken, and Plaintiff be prohibited from using
them for the remainder of the case. Defendant goes on to demand a response from Plaintiff
within four hours. Plaintiff responded within two hours that she objected and was out of
town assisting a family member with a medical problem, pointing out Defendant did not

---

[30] ECF No. 119.
[31] ECF No. 110.

contact her earlier in the week and only gave her a few hours for a response. Neither party suggested a telephone conference nor placed a telephone call to discuss the dispute.

Prior decisions in this District have considered the parties' conferral requirements under D. Kan. Rule 37.2 when considering a motion to exclude evidence for a parties' failure to comply with Fed. R. Civ. P. 26(a).[32] However, more recently, this District analyzed whether D. Kan. Rule 37.2 applies to motions filed pursuant to Fed. R. Civ. P. 37(c)(1).[33]

This Court need not decide Defendant's Motion based upon whether the parties conferred pursuant to D. Kan. Rule 37.2, as Defendant's Motion fails on other grounds, and the Court does not believe sending the parties back to confer would assist in this case which has consistently, despite the experience level of all counsel, demonstrated a lack of communication between them. Regardless, this Court does not find the parties conferred in the spirit of D. Kan. Rule 37.2, which requires the parties, "in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."  The Rule specifically instructs the parties they need to do more than email in their conferral efforts,[34] and for good reason.  Perhaps had the parties done so, the spirit of true conferral

---

[32] *Boardwalk Apartments L.C. v. State Auto Property and Casualty Ins. Co.,* No. 11-2714-JAR, 2014 WL 2804002, at *4 (D. Kan. June 20, 2014) (Denying Defendant's motion for sanctions to exclude an appraisal from evidence for failing to comply with the meet and confer requirements of D. Kan. Rule 37.2); Also see, *Ast v. BNSF Railway Co.,* No. 09-2519-EFM/DWB, 2012 WL 252140, at *6 (D. Kan. Jan. 26, 2012) (finding Defendant met its duty to confer under D. Kan. Rule 37.2 prior to filing its motion under Fed. R. Civ. P. 37(c)(1) to exclude late disclosed records in violation of Fed. R. Civ. P. 26(a)).

[33] *Walker v. Corizon Health, Inc.*, No. 17-2601-DDC, 2022 WL 1623823, at *2 (D. Kan. May 23, 2022) (holding D. Kan. Rule 37.2 does not apply to motions to exclude filed under Fed. R. Civ. P. 37(c)(1)).

[34] D. Kan. R. 37.2.

would benefit the parties moving forward in this case, as they prepare for Rule 56 practice and a potential trial.

## IV.   **The Parties' Positions**

    **A.**    Defendant filed the instant Motion requesting the Court prohibit Plaintiff from calling the witnesses or using the documents identified in his supplemental disclosures throughout the remainder of this case and argues allowing Plaintiff to do so would result in prejudice to Defendant.[35]

    **B.**    In stark contrast, Plaintiff argues Defendant's Motion is frivolous, and he should be awarded attorney fees for being required to respond to the Motion.[36]  Plaintiff further argues some of the documents he identifies are in the custody and control of Defendant and information provided by the identified witnesses could have been obtained through Defendant's own employees.[37]

## V.   **Legal Standards**

    Fed. R. Civ. P. 26 ("Rule 26") generally governs discovery disclosures in federal civil cases and requires, without a discovery request, parties to provide, "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."[38]  Rule 26 goes on to require, without a discovery request, delivery or disclosure of, "a copy--or a description by category and location--of all documents, electronically stored information,

---

[35] ECF Nos. 111, 115.
[36] ECF No. 114.
[37] *Id.*
[38] Fed. R. Civ. P. 26(a)(1)(A)(i).

and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."[39]

Rule 26(e)(1)(B), governs supplements and corrections to prior discovery and states "A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory…must supplement or correct its disclosure or response…" in two instances: as ordered by the Court, and:

> in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information *has not otherwise been made known to the other parties during the discovery process or in writing.* [Emphasis added.]

Fed. R. Civ. P. 37(c)(1) relates to the consequences for a party's failure to comply with Rule 26 and states, in part, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The burden to show a substantial justification or lack of harm is on the party who failed to make the required disclosures.[40]

Whether a Rule 26(a) violation is justified or harmless is a determination, "entrusted to the broad discretion of the district court."[41] Defendant's Motion requests the Court

---

[39] Fed. R. Civ. P. 26(a)(1)(A)(ii).
[40] *Estate of McDermed v. Ford Motor Co.*, No. 14-cv-2430-CM-TJJ, 2016 WL 1298096, at *3 (D. Kan. April 1, 2016) (citing *Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 639 (D. Kan. 2001) (burden to establish harmlessness is on the party who failed to make the required disclosure)) and *Paliwoda v. Showman*, No. 12-2740-KGS, 2013 WL 5938027, at *7 (D. Kan. Nov. 6, 2013) (burden to demonstrate substantial justification and the lack of harm is on the party who failed to make the required disclosure).
[41] *Estate of McDermed* at *3 (D. Kan. 2016) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

exclude evidence, which this District has held is a "drastic sanction."[42]   In determining whether to exclude evidence, a court is not required to, "make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose, but the court should be guided by the following factors: 1) the prejudice or surprise to the party against whom the testimony is offered, 2) the ability to cure any prejudice, 3) the potential for trial disruption if the testimony is allowed, and 4) the erring party's bad faith or willfulness."[43]

In applying Rule 37(c)(1), "the court must first determine whether substantial justification for failing to make the required disclosures exists."[44]   If the court does not find the existence of a substantial justification, the court must go on to evaluate whether the failure to disclose was harmless.[45] "The failure to disclose is considered harmless 'when there is no prejudice to the party entitled to the disclosure'."[46] The case of *Burton v. R.J. Reynolds Tobacco Co.* lends some clarity to the meaning of prejudice, as contemplated by Rule 37, which involved expert disclosures supplemented by plaintiff just three months prior to trial.[47] While defendants in that case argued prejudice due to late supplemental expert disclosures complicating its ability to prepare a motion for summary judgment, the court found defendant was only "inconvenienced" by plaintiff's late disclosure regarding

---

[42] *Burton v. R.J. Reynolds Tobacco Co.,* 203 F.R.D. 636, 640 (D. Kan. Nov. 1, 2001) (citing *In re Indep. Serv. Orgs. Antitrust Lit.,* 85 F.Supp.2d 1130, 1162 (D. Kan. 2000)).
[43] *Id.*
[44] *A.H. ex rel. Hohe v. Knowledge Learning Corp.,* No. 09-2517-DJW, 2011 WL 1466471 at *2 (D. Kan. April 18, 2011) citing *Umbenhower v. Copart, Inc.,* 222 F.R.D. 672, 675 (D. Kan. 2004).
[45] *Id.*
[46] *Id.*
[47] *Burton* at 639.

its motion for summary judgment.[48] The court, while finding defendant just tipped the scales to show some prejudice existed, also found defendant failed to demonstrate extreme prejudice by the late disclosures because defendant declined to conduct additional depositions of the experts regarding the information provided in the late disclosures.[49]

The purpose of the Rule 26 disclosures is to provide the receiving party with sufficient detail and clarity, "to make informed decisions about the discovery necessary to address the specific claims directed against that party, and to prepare for trial."[50]

## VI.   <u>Analysis</u>

Defendant requests an order from this Court prohibiting Plaintiff from using the exhibits and witnesses he identified in his supplemental disclosures pursuant to Fed. R. Civ. P. 37(c)(1). The Court will address each category of disclosures in turn. In determining whether Plaintiff is substantially justified, or whether Defendant is harmed by the late disclosure, this Court will analyze: 1) any prejudice or surprise to Defendant, 2) the ability to cure any prejudice, 3) the potential for trial disruption if the testimony and exhibits are allowed, and 4) bad faith or willfulness of Plaintiff.[51]

First, the Court does not find any evidence of bad faith or willfulness related to these supplemental disclosures, as Plaintiff was extremely swift in supplementing his initial disclosures once the information was elicited at his deposition.

---

[48] *Id.*
[49] *Id.* at 640.
[50] *Blair, et al. v. TransAm Trucking, Inc.*, No. 09-2443-EFM-KGG, 2017 WL 26884296, at *2 (D. Kan. June 21, 2017) (quoting *Estate of McDermed v. Ford Motor Co.*, No. 14–2430–CM–TJJ, 2016 WL 1298096, at *3 (D. Kan. 2016)).
[51] *Woodworker's Supply* at 993.

In sum, the Court does not find substantial justification for the late disclosures, but also fails to find the supplemental disclosures result in any harm to Defendant based upon consideration of the factors set forth in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*[52] In *Woodworker,* the Tenth Circuit considered whether Plaintiff's failure to disclose its damage theory prior to trial should result in exclusion of the evidence under Fed. R. Civ. P. 37(c). In its complaint, Woodworker asked for "compensatory damages" in an amount "to be proven at trial."[53] At trial, counsel asked for damages equal to the "difference between the amount" paid in premiums "and the amount they paid in claims" be refunded to plaintiff.[54] This calculation was not clear in Woodworker's pretrial disclosures, and its corporate representative did not explain this damage calculation during his deposition.[55] When questioned about these damages at trial, counsel for defendant objected, and the trial court offered defendant the right to question the witness outside the presence of the jury in order to cure any prejudice.[56] The Tenth Circuit found the admission of the damage theory at trial was harmless under the four factors to consider.[57]  The court noted defendant was given an opportunity to cure any prejudice by questioning plaintiff outside the presence of the jury, but defendant declined to do so.[58] The court also observed defendant did not elicit any testimony on the subject of damages, nor did it argue it needed additional time to calculate the damages claim.[59]  The court further found no evidence of

---

[52] *Id.*
[53] *Id.* at 992.
[54] *Id.*
[55] *Id.*
[56] *Id.* at 993.
[57] *Id.*
[58] *Id.*
[59] *Id.*

bad faith, despite plaintiff not supplementing its disclosures, because plaintiff was likely forced to change its damage theory after the court found ERISA preempted a number of its claims.[60] The Tenth Circuit found no abuse of discretion in allowing the evidence regarding damages be admitted at trial, despite the plaintiff's failure to supplement its Rule 26 disclosures, and the plaintiff's corporate representative failing to disclose the damages calculation at his deposition.[61]

### A.      Witnesses

This case was filed on September 17, 2020, and for the first time in his November 11, 2022, deposition and supplemental disclosures filed two days later, Plaintiff identified Ella Potts, Barry Anthony and Curtis Eaton as individuals likely to have discoverable information.[62]  Plaintiff does not provide a telephone number, address, or any other contact information for these three potential witnesses in his supplemental disclosures.[63] He indicates each witness, "may have information concerning the events related to the pending litigation."[64]  He identifies each witness as either an employee of Defendant or a union steward.[65]

Plaintiff indicates the names of two of the witnesses identified in his supplemental disclosures (Ella Potts and Barry Anthony) were disclosed during his deposition on November 11, 2022.[66] Plaintiff argues Defendant should not be surprised by the

---

[60] *Id.*
[61] *Id.*
[62] ECF Nos. 1, 111, Exh. B, 114.
[63] ECF No. 111, Exh. B
[64] *Id.*
[65] *Id.*
[66] ECF No. 114.

identification of Barry Anthony, a former union steward.[67]  Ella Potts is a former UPS employee and union member, while Curtis Eaton currently works for UPS.[68] Defendant had from November 14, 2022, until the close of discovery on December 7, 2022, (and likely longer had Defendant requested additional time from the Court) to depose, interview, or obtain affidavits from the three witnesses identified by Plaintiff during his deposition and in the supplemental disclosures.

Since Curtis Eaton works for Defendant, there is little doubt counsel could query Mr. Eaton regarding what information he may have relevant to this case.  Thus, any representations of prejudice or surprise to Defendant is curable with regard to this witness.

With regard to Mr. Anthony and Ms. Potts, both were identified by Plaintiff during his deposition, when Plaintiff was examined by Defendant regarding the possibility of any other witnesses.[69] Defendant had the opportunity to fully inquire of Plaintiff during his deposition regarding what relevant information those witnesses may have to the claims or defenses in this case, especially since the witnesses are in such close proximity to this case, but it does not appear Defendant took the time to do so.  Defendant does not argue a diligent search would not have resulted in the location of these individuals.

As this District has held, the exclusion of testimony is a drastic sanction, and one the Court finds inappropriate in this circumstance.[70] It is impossible for the Court to find the supplemental disclosure of these witnesses resulted in surprise or prejudice to the

---

[67] ECF No. 111, Exh. B.
[68] *Id.*
[69] ECF No. 114.
[70] *Burton v. R.J. Reynolds Tobacco Co.,* 203 F.R.D. 636, 640 (D. Kan. Nov. 1, 2001) (citing *In re Indep. Serv. Orgs. Antitrust Lit.,* 85 F.Supp.2d 1130, 1162 (D. Kan. 2000)).

Defendant when Defendant declined to question Plaintiff about the information these witnesses could provide, Defendant failed to request additional time for discovery from the Court, it refused to provide the Court with information regarding what discovery it wanted to conduct regarding these witnesses, (despite the Court asking counsel repeatedly about additional discovery avenues,) and, finally, when trial in this case is still over nine months away. The Court finds the late supplemental disclosure of Ella Potts, Barry Anthony and Curtis Eaton has resulted in no harm to Defendant and would cause no disruption in the trial if these witnesses are allowed to testify.

### B.  Exhibits

During his deposition, the Plaintiff also disclosed the existence of text messages with his co-workers Joe Ortiz (a union steward,) Susan Barthol, Shime Holmes, and a photo of a bid sheet texted to Plaintiff by, "April." Duplicates of the text messages were provided to Defendant in Plaintiff's supplemental disclosures.  Mr. Ortiz, Mr. Holmes and Ms. April Marshall are all identified in Plaintiff's initial Rule 26 disclosures. As disclosed by Plaintiff during the pretrial conference, Mr. Ortiz and Ms. Barthol were also identified as witnesses in Plaintiff's written discovery answers.[71]

It does not appear Defendant made an attempt to discover information related to the text messages involving these individuals after Plaintiff disclosed their existence during his deposition.  There were no representations to the Court regarding whether Defendant inquired further of Plaintiff during his deposition regarding the text messages, dates of the messages, or authenticity of the messages.  It did not take the depositions of these witnesses

---

[71] *Also see,* ECF No. 114, Exh. 4.

even though they were identified in Plaintiff's Rule 26 disclosures and written discovery answers or interview the witnesses who are employed by Defendant, despite the close proximity they have to this case.

During oral argument and briefing, Defendant argued one of its interrogatories asked whether Plaintiff, "kept any notes, diaries, journals, calendars, blogs, audio and/or video recordings, or any other records of any events or conversations that relate to the allegations in your complaint."[72] Plaintiff responded, "no" to that interrogatory.[73] Defendant also propounded an interrogatory in which Plaintiff's answer reflected that he "uses his cell phone to communicate with many people, including UPS employees."[74] Plaintiff goes on to answer, "While Plaintiff cannot recall every conversation on his phone, he does recall speaking with James Willis, and others listed in Interrogatory 3."[75] Unfortunately, neither party provided the Court with the individuals identified in interrogatory 3, so it is unknown if Mr. Holmes, Mr. Ortiz, Ms. Barthol, or Ms. Marshall were listed. However, Plaintiff's answer clearly put Defendant on notice that he used his cellular telephone to communicate with co-workers. These interrogatory answers seem somewhat inconsistent with each other, and Defendant argued Plaintiff is required to correct or supplement his negative response to the interrogatory inquiring about records of conversations. However, Plaintiff is only required to correct his response to an interrogatory, "…if the corrective information has not otherwise been made known to the

---

[72] *See,* ECF No. 111, Exh. A.
[73] *Id.*
[74] ECF No. 114, Exh. 4.
[75] *Id.*

other parties during the discovery process or in writing."[76]   Plaintiff complied with discovery rules regarding this change to his negative response to the interrogatory asking for records of conversations because he corrected the response at his deposition which was "during the discovery process" and in writing through his supplemental disclosures.

In addition to disclosing the existence of the text messages during his deposition, Plaintiff previously confirmed there were text messages between himself, Susan Barthol, and Joe Ortiz in his written discovery answers, establishing Defendant can in no way claim surprise or prejudice regarding text messages between Plaintiff and these two individuals.[77] Plaintiff also alerted Defendant that he used his cellular phone to communicate with his co-workers at UPS.[78] Further, both Ms. Barthol and Mr. Ortiz are current employees of Defendant, so the ability to obtain copies of, get the dates of, or authenticate the text messages is available to Defendant.[79]

Turning to the text messages between Plaintiff and Shime Holmes, again, when identified in the Rule 26 disclosures, Mr. Holmes was employed by Defendant. It does not appear Defendant did any investigation into what information Mr. Holmes had in relation to this case.  Even a cursory investigation or simple interview of Mr. Holmes would have resulted in Defendant discovering the text messages between Mr. Holmes and Plaintiff. Any purported surprise or prejudice to Defendant could easily be cured with regard to this witness through an informal interview, Defendant's request for leave to depose Mr. Holmes, or through an affidavit.

---

[76] Fed. R. Civ. P. 26(e)(1)(A).
[77] ECF No. 115, fn 3.
[78] ECF No. 114, Exh. 4.
[79] ECF No. 111.

The text from Ms. Marshall is simply a photograph of a UPS bid sheet, a document within the custody and control of Defendant, and the disclosure of which is not prejudicial or a surprise to Defendant.

Defendant argued at both the status conference on November 14, 2022, and the pretrial conference on December 19, 2022, that it would have taken the opportunity to have Plaintiff's cellular telephone forensically examined to authenticate the texts had it known they existed.  It seems likely, if a forensic examination of Plaintiff's cellular telephone was a realistic avenue for Defendant, it would have already accomplished this examination based simply on the disclosure of text messages between Plaintiff, Ms. Barthol, and Mr. Ortiz, which Defendant knew about back in 2021.[80]  Nevertheless, Defendant had at least three weeks (from the time of the deposition until the discovery deadline) to make a request to the Court for leave to have the device examined. During the pretrial conference on December 19, 2022, the Court, twice, specifically asked Defendant what additional discovery it needed.  In response to the Court's inquiry, Defendant again argued it may have had the cellular telephone examined by a forensic expert to authenticate the text messages.  However, instead of asking for time to have this completed, Defendant lamented the late supplemental disclosures and the lack of time to now conduct any discovery regarding the text messages.   At no time after the supplemental disclosures were made did Defendant ever make any request to the Court for additional discovery or request time to have the cellular telephone forensically examined, despite the Court asking Defendant what discovery it wanted to conduct regarding the supplemental disclosures, extending the

---

[80] ECF No. 47, 115, fn 3.

discovery deadline, indicating it could further extend discovery, and requesting the parties confer with each other and the Court. Defendant has not taken advantage of any of the options suggested by the Court.

This Court cannot ignore the premise that suggests early investigation of the individuals identified in Plaintiff's Rule 26 disclosures could have produced knowledge of the text messages. Defendant has no reason to be surprised by the existence of relevant information attainable from Shime Homes, Joe Ortiz, April Marshall and Susan Barthol. Defendant determined it did not need to find out what information these witnesses had despite their identification in Plaintiff's Rule 26 disclosures and in written discovery.[81] The existence of text messages should be of no surprise Defendant, as it was aware Plaintiff used his cellular telephone to communicate with co-workers, and he disclosed the fact that he texted with co-workers (specifically identifying Ms. Barthol and Mr. Ortiz.)[82]

Plaintiff also provided photographs of other UPS bid sheets in his supplemental disclosures.[83] These bid sheets are documents drafted and posted at the Defendant's location which reflect job opportunities. The bid sheets have been at issue throughout the life of this case, from the time Plaintiff's complaint was first filed on September 17, 2020, up to and including the pretrial conference when Plaintiff contended it was still waiting on certain bid sheets to be produced by Defendant.[84] Defendant cannot claim prejudice or surprise by the production of bid sheets which have been at issue since the inception of this case and of which Defendant has the ultimate custody and control, but claims were lost.

---

[81] ECF Nos. 114, Exh. 4, 115, fn 3.
[82] *Id.*
[83] ECF No. 111, Exh. C.
[84] ECF No. 1, 119.

The loss of the bid sheets does not change the fact that they were drafted by Defendant, posted at Defendant's business location, and the originals are in (or should be in) its custody.  In reality, it was likely Defendant's duty to produce these documents to Plaintiff either pursuant to Rule 26 or written discovery.[85]  The Court will not allow Defendant to ask the Court to accept that the bid sheets previously requested by Plaintiff were lost, and then claim surprise or prejudice when Plaintiff has photographs of the purported originals on his cellular telephone.

Defendant does not argue there will be any disruption in the trial if the text messages or bid sheets are offered as evidence, and the Court does not foresee disruption in the trial.

Neither party addresses the hand-written notes produced by Plaintiff or the revised damages claim in Plaintiff's supplemental disclosures.  As such, the Court declines to find harm to Defendant in that regard.

## VII.  <u>Sanctions</u>

Plaintiff's Response requests the Court order Defendant to reimburse him attorney fees incurred in responding to Defendant's Motion.[86] Plaintiff asserts Defendant's Motion is frivolous and attorney fees are warranted.[87] Federal courts may, "exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[88] The Court does not find Defendant's Motion was presented for an improper purpose; there was no bad faith, vexatiousness, wantonness and

---

[85] Fed. R. Civ. P. 26(a)(1)(A)(ii).
[86] ECF No. 114.
[87] *Id.*
[88] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S.Ct. 2123, 2126 (June 6, 1991) *Reh'g denied* Aug 2, 1991, citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (May 12, 1975).

it was not filed for oppressive reasons; only zealousness. The Court **DENIES** Plaintiff's request for attorney fees.

## VIII.  <u>Conclusion</u>

In summary, the Court recognizes Plaintiff was late in filing his supplemental disclosures.  However, while Defendant argues the late disclosures result in prejudice, the Court is hard-pressed to find prejudice in the this case where Defendant utterly failed to investigate the information of witnesses in Plaintiff's Rule 26 disclosures, depose witnesses identified by Plaintiff in his Rule 26 disclosures, interview its own employees regarding communications with Plaintiff, produce documents it drafted of which it has or should have the originals, and failed to take any reasonable opportunity to engage in additional discovery relating to the disclosures. The Court finds the late supplemental disclosures have resulted in no harm to Defendant.

**IT IS THEREFORE ORDERED**, as set forth above, that the Motion for Sanctions (**ECF Nos. 110**) is **DENIED**.

**IT IS FURTHER ORDERED**, as set forth above, Plaintiff's request for attorney fees is **DENIED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 10th day of January 2023.

 s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge