## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KEVIN R. STEWART,**

      **Plaintiff,**

      **v.**

**UNITED PARCEL SERVICE, INC.,**

      **Defendant.**

**Case No. 20-CV-2461-JAR**

## MEMORANDUM AND ORDER

Plaintiff Kevin Stewart brings suit against Defendant United Parcel Service, Inc. ("UPS"). He asserts four claims including (1) hybrid breach of contract, (2) race discrimination, (3) hostile work environment/harassment, and (4) retaliation. Defendant seeks summary judgment on all claims (Doc. 123). The motion is fully briefed. For the reasons stated in more detail below, the Court grants Defendant's motion.

## I.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue

of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the

non-moving party."[5]

The moving party initially must show the absence of a genuine issue of material fact and

entitlement to judgment as a matter of law.[6]  Once the movant has met this initial burden, the

burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine

issue for trial."[7]  The nonmoving party may not simply rest upon its pleadings to satisfy its

burden.[8]  Rather, the nonmoving party must "set forth specific facts that would be admissible in

evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]

To accomplish this, the facts "must be identified by reference to an affidavit, a deposition

transcript[,] or a specific exhibit incorporated therein."[10]  The non-moving party cannot avoid

summary judgment by repeating conclusory opinions, allegations unsupported by specific facts,

or speculation.[11]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it

is an important procedure "designed 'to secure the just, speedy and inexpensive determination of

---

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[7] *Anderson*, 477 U.S. at 256.

[8] *Id.*; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[10] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[11] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

every action.'"[12]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[13]

## II.    Uncontroverted Facts[14]

The Court initially notes that Plaintiff failed to follow this Court's summary judgment procedures.  Plaintiff set forth multiple facts in both his response to Defendant's statement of facts and in his own statement of facts in violation of D. Kan. Rule 56.1.  This rule provides that "[a] brief in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exits.  Each fact in dispute must be numbered by paragraph [and] refer with particularity to those portions of the record upon which the opposing party relies."[15]  In addition, D. Kan. Rule 56.1(b)(2) provides that "[i]f the party opposing summary judgment relies on any facts not contained in movant's brief, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above."  The inclusion of multiple facts, with several different citations to the record, unnecessarily complicates the Court's review of the facts.

In addition, Plaintiff's factual assertions are frequently not supported by the record.  For example, Plaintiff cites to testimony that is not in the record.[16]  He also frequently cites to

---

[12] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[13] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[14] The facts are uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff as the nonmoving party.  As will be noted below, Plaintiff failed to controvert many facts appropriately or adequately.

[15] D. Kan. Rule 56.1(b)(1).

[16] In one purported fact with two factual contentions, he cites to deposition pages, but only seven of the approximately 100 pages of deposition testimony was in the record.  *See* Doc. 127 at ¶ 103.

deposition testimony that does not support his purported fact or his objection to Defendant's fact.[17]  It is not the Court's duty to scour the record in an attempt to find support for Plaintiff's purported facts or for evidence to support Plaintiff's contradiction of Defendant's statement of facts.[18]  Thus, the Court will only set forth the facts that are supported by the record.[19]

Plaintiff Kevin Stewart is an African American male and has been employed by Defendant UPS since 1987.  Defendant has a Professional Conduct and Anti-Harassment Policy which prohibits discrimination, harassment, and/or retaliation of its employees and provides several ways for employees to report complaints.  Plaintiff is a member of the International Brotherhood of Teamsters, Local Union 41 ("Union").  Plaintiff's employment is subject to the National Master United Parcel Service Agreement ("Master Agreement") and the Teamsters Central Region and United Parcel Service Agreement ("Supplemental Agreement") (collectively referred to as the "CBA").  The CBA sets forth the grievance process by which bargaining unit employees can raise concerns relating to their working conditions.

Seniority is broken down into part-time seniority and full-time seniority.  Defendant maintains the flexibility to assign specific work and tasks within a work area.  The CBA provides the grievance procedure for unionized employees to raise concerns regarding the terms and conditions of their employment and states that a decision is final and binding to both parties.

An Article 22.3 position combines several part-time jobs to create a single full-time job.  These Article 22.3 positions were created to provide full-time work for part-time employees.

---

[17] Of the 92 facts asserted by Plaintiff in his additional statement of facts, fewer than 15% were supported by an appropriate citation to the record or supported by the record.

[18] *Freebird Commn's, Inc. Profit Sharing Plan v. Roberts*, No. 18-CV-2026-HLT, 2019 WL 5964583, at *1 (D. Kan. Nov. 13, 2019) (citations omitted).

[19] The Court also notes that Plaintiff often includes legal conclusions as "facts."  To the extent that Plaintiff asserts a legal conclusion, the Court will disregard.

Part-time employees may bid into the position pursuant to the CBA.  Defendant lists full-time Article 22.3 openings on bid sheets (with bid numbers) that are posted around the facility.  An employee who desires a full-time Article 22.3 position must "bid into" the job by placing their name and seniority date on the bid sheet.

Full-time employees within the same classification of the vacancy and with the most seniority get first priority per the CBA.  If no full-time employee within the same classification bids on the opening, the next priority goes to all full-time employees outside the classification, per seniority as set forth in the CBA.  If no full-time employee bids into the full-time position, then the next priority is part-time employees.

From 1987 to 2021, Plaintiff worked as a part-time preload employee at UPS's North James Street facility where the workforce is approximately 50% minorities.  In 2015, a UPS employee, Oweyummi, was terminated from his job as damage clerk.  Hassan El-Amin (African American) was an Article 22.3 full-time employee, and his job was designated hazmat clerk and work as assigned.  El-Amin was not able to get the damages work done by himself, and a part-time damages clerk position was created in 2015.  Plaintiff bid into the position and began working as a part-time damage clerk (handling damaged packages).  Plaintiff testified that the 2015 bid sheet for damage clerk, however, does not represent the bid sheet that he signed.

On February 27, 2015, Plaintiff filed a grievance claiming that Defendant was not awarding full-time Article 22.3 positions to part-time employees in violation of the CBA.  The Union and management heard the grievance and determined that there was no contract violation.

Defendant maintains a policy that if a part-time employee works full-time hours 30 days within a 90-day period, the part-time employee can request full-time employment.  From 2015-2020, Plaintiff regularly worked the job of damage clerk beyond part-time hours.

Plaintiff filed another grievance on February 17, 2016.  He stated that he was "filing for a full time job because [he had] been doing this full time job that was occupied in the past by [Article] 22.3 employees.  [He had] done this job in excess of 30 days.  This job was posted in September 2015, which allowed [him] to get 30 [days in the position] in 90 [days]."[20]  The grievance was elevated to the two-state level but was withdrawn by the Union on June 23, 2016.

In 2016, Plaintiff also filed a Charge with the National Labor Relations Board ("NLRB") alleging that the Union breached its duty of fair representation by failing and refusing to continue processing grievances over Defendant's alleged violation of Article 22, Section 3, by failing to create full-time jobs at the North James facility.  On May 20, 2016, the NLRB dismissed Plaintiff's Charge stating that

> the Union decided to withdraw [grievances by Plaintiff and others] after completing an investigation.  The Union determined that there was no evidence that the Employer was failing to meet its obligations to create full-time jobs under the contract; in fact, the Employer had created full-time jobs at the Employer's Lenexa facility, which the employees at the North James location were free to bid upon.  Because the contractual language does not specify where these full time jobs are to be created, the Union determined that there was no contractual breach warranting continued processing of the North James grievances.  In addition, the Union determined that the North James location only offered part-time preload, and as such, the work volume did not support seeking multiple full-time, non-driver positions at the North James facility.  As such, the Union withdrew the grievances.  In these circumstances, there is no evidence that the Union's withdrawal of these grievances was unlawfully motivated or done in bad faith, but was instead based upon rational considerations.[21]

In late 2019, Kelly Ceesay returned as the preload manager at the North James facility.  She discovered the preload section of the facility was disorganized, inefficient, and there was

---

[20] Doc. 124-14 at 2.

[21] Doc. 124-15 at 2.

confusion as to who worked in which section of the facility.  During this same time, Defendant implemented Saturday service, which also supported a restructuring of positions.

Plaintiff testified that in January 2020, Ceesay attempted to re-assign Plaintiff's damage clerk position to El-Amin by asking El-Amin to lie and state that he always had that position. On January 8, 2020, Plaintiff filed a grievance against Ceesay concerning the claim that El-Amin's original bid job was damage clerk.[22]  Plaintiff testified that after a meeting between himself, Willis (the union steward), and Ceesay, he remained in the damage clerk position for several more months.

In March 2020, Ceesay decided to rebid the full-time Article 22.3 positions at the James Street facility.  Defendant may restructure jobs as needed without violating the CBA.  Ceesay consulted with UPS management, labor relations, and the Union for approval of her plan to restructure the preload.  They approved her plan.  Defendant rebid approximately 13 Article 22.3 positions during this restructuring.

In March 2020, both Plaintiff and El-Amin bid for an open Article 22.3 position, posted on March 12, 2020, and identified as "overgoods/damages/data acquisition/work as assigned."[23] Defendant awarded the full-time Article 22.3 position to El-Amin based on his seniority and classification of being a full-time Article 22.3 employee.  On March 23, 2020, Plaintiff made a hotline complaint to Defendant's Human Resources stating that Defendant engaged in improper actions due to him filing a grievance.

---

[22] As to this January 8 grievance, Plaintiff asserts in his factual statement that he filed a grievance on January 8 and that Mike Bayers retaliated against him for this grievance on January 14, 2020.  Plaintiff's citation to the record for these facts, however, does not support Plaintiff's contentions. In addition, the Court was unable to locate this grievance in the list of Plaintiff's other grievances.  Nevertheless, Defendant does not dispute that Plaintiff filed a grievance regarding Ceesay on January 8.  Thus, the Court will treat this fact as uncontroverted. There is no support in the record, however, that Bayers "harassed and retaliated" against Plaintiff on January 14 for filing this grievance, and Defendant disputes this fact.  Thus, the Court will not accept it as uncontroverted.

[23] Doc. 124-12 at 2.

In connection with restructuring the workforce, and after Plaintiff was no longer considered to be working as a part-time damage clerk, Defendant asked Plaintiff where he wanted to work.  Plaintiff expressed his intent to work in the irregulars work area.  Defendant assigned him to work in the irregulars work area where he continued as a part-time employee.  Plaintiff's transfer to the irregulars area did not result in a change to Plaintiff's benefits, pay, or employment status.  Defendant paid Plaintiff, as a part-time employee, time and a half whenever he worked in excess of five hours in a single shift.

Defendant has motorized carts called pito carts for qualified employees to use to transport irregularly shaped packages around the facility.  Driving the pito cart is not a standalone job, meaning there is no job title called "pito cart driver."  Driving the pito cart is an individual job task for an employee in the irregulars work area.  While Plaintiff worked in the irregulars area in 2020-2021, he felt he should be able to drive the pito cart based on his seniority.

Plaintiff served on the Safety Committee during this same time (2020-2021), which often met at the start of Plaintiff's shift.  Performing his Safety Committee duties required Plaintiff to sometimes miss the first 30 to 40 minutes of his shift, and sometimes required him to miss the first 3.5 hours.  When Plaintiff returned from the Safety Committee meetings, he would regularly request, based on his seniority, to bump whomever Defendant had already assigned to the pito cart.  There is nothing in the CBA that requires or prevents an employee with the most seniority to drive the pito cart.

On May 14, 2020, Plaintiff complained to Human Resources about discrimination and retaliation alleging that Mike Bayers (Caucasian) was treating Caucasian employees better than

him by allowing them to drive the pito cart.[24]  Defendant investigated Plaintiff's allegations and determined on June 8, 2020, that they were not substantiated.

On April 24, 2020, Plaintiff filed a grievance stating that he should have been awarded a full-time job earlier based on the work he believed he had been performing for the past five years.  On June 3, 2020, he filed a grievance stating that after he returned from Safety Committee, he was not allowed to drive the pito cart and was not allowed to have a union steward dispute the problem.[25]  Plaintiff claims that he did not withdraw his grievances, but the Union did so, without notice to Plaintiff.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 18, 2020.  When he filed his Charge, he was a part-time employee.  He alleged in his Charge the following adverse actions:

> Jan 8, 2020 Supervisor and employee lied about who was the original job holder for my position, this was form of retaliation based on a prior complaint, charge[s] and grievances from 2015
>
> Jan 14, 2020 after turning in a grievance, there was a retaliation from another supervisor that forced me to get off the clock April 13, 2020 my job was given to another employee.  It was given to the employee that lied and conspired against me with the supervisor
>
> Since then I have experienced more retaliation, harassment and discrimination, by Mike Bayers and Jayden Williamson.  Both have not honored my seniority and allowed me to do the job I am qualified to perform.  They have been allowing people with less

---

[24] Although there is no specific cite to the record, the Court concludes that Bayers was Plaintiff's supervisor/manager.

[25] The Court notes that the factual assertions behind these two grievances illustrates the Court's problem with Plaintiff's summary judgment record in this case.  Plaintiff references these two grievances but never directly cites to the exhibit demonstrating factual support that he filed grievances on April 24 and June 3.  Instead, he cites to different portions of the record that do not support that factual assertion or cites to portions of the record that were not included for the Court to review.  The Court located the grievances due to Defendant's identification of the document in response to a different factual assertion.  In short, the record in this case made it exceedingly difficult for the Court to determine whether Plaintiff had support for his factual contentions.

> seniority and also allowing people of the Caucasian race to
> perform the job.  In addition they have filed a false document and
> report in my file.  I am now finding myself in situation where,
> Jayden Williamson is trying to provoke a verbal altercation with
> me.[26]

Plaintiff testified that Bayers forced him to clock out on one occasion and threatened to fire him multiple times.  Plaintiff also testified that Jayden Williamson (Caucasian) approached him, made him take his mask off, told Plaintiff to get off the pito car, and the two of them had a disagreement.  Shortly after Plaintiff's May 18 EEOC Charge was filed, Bayers was transferred to another position.  Plaintiff contends that he did not experience any more retaliation.

Plaintiff filed his Complaint in this Court on September 17, 2020.  On November 3, 2020, Plaintiff filed another NLRB charge against the Union.  He alleged that

> [o]ver the past six months, the [Union] has restrained and coerced
> employees in the exercise of rights protected by Section 7 of the
> Act by refusing to process the grievances of Kevin Stewart
> regarding (1) supervisor harassment, retaliation, and
> discrimination; (2) displacement from a job[;] and, (3) conspiracy
> between an employee and a supervisor to remove him from a
> position for arbitrary or discriminatory reasons or in bad faith.[27]

On February 11, 2021, the NLRB dismissed Plaintiff's charge.  The dismissal letter stated, in part:

> The charge alleged that the Union refused to process certain
> grievances concerning your Employer's refusal to award you a
> fulltime damage clerk position and the failure to permit you to
> operate a pedo train based on seniority.[28]  The investigation
> disclosed that you originally held a position whose duties included
> performing the duties of a damage clerk as well as other duties in
> your classification.  Over time, the Employer modified the duties
> of the damage clerk.  In January 2020 the Union successfully
> intervened on your behalf and prevented the Employer from
> assigning the damage clerk position to another employee.  In April

---

[26] Doc. 124-18 at 2–3.

[27] Doc. 124-16 at 2.

[28] The Court notes that the parties refer to the "pito cart" and the "pedo train" as the same thing.

2020, the Employer put the damage clerk position up for bid.  The fulltime damage clerk position was then awarded to a fulltime employee with higher seniority.  The Union filed a grievance on your behalf and met with the Employer but withdrew the grievance, explaining to you that it had no merit as the Employer retained discretion on the duties of the position of damage clerk, the manner of bidding, and on whether the damage clerk is a fulltime or parttime position.

With respect to the alleged failure to process grievances on the claimed denial of a right to operate the pedo train based on seniority and assigning you other tasks, the Union filed a grievance on your behalf and met with the Employer.  While the Employer contended that other duties you were assigned in place of the operating the pedo train were within your job classification and appropriately assigned to you, and that such assignments are not subject to seniority, the Employer nonetheless agreed to allow you to operate the pedo train and agreed to find less senior employees to perform other duties in your classification before assigning such tasks to you.  You have since been regularly operating the pedo train.  The Union informed you, however, that when assigned tasks you dispute, you are required to comply and grieve, and you are not entitled to disregard supervisors work assignments.  For this reason, the Union did not grieve discipline issued to you for failure to follow instruction when you refused a supervisor's instruction that you not operate the pedo train but attend to other tasks.  With respect to your contention that the Union failed to inform you of meeting on your grievances so you could personally advocate the merits of your grievance, the evidence does not establish that such was the Union's practice in handling grievances and, moreover, the manner of arguing the merits of grievances is within the Union's reasonable exercise of discretion and judgment.  On the whole, the evidence does not establish that the Union failed to represent you in your disputes over obtaining a fulltime position and using seniority to obtain a preferred job assignment.  The Union's actions on your grievances fall within that wide range of reasonableness afforded unions in processing grievances, and the evidence fails to establish the Union's actions were discriminatory, arbitrary or undertaken in bad faith.  In these circumstances, additional proceedings are unwarranted, and I am declining to issue a complaint.[29]

---

[29] Doc. 124-17 at 2–3.

The NLRB's dismissal letter gave Plaintiff the right to appeal by February 25, 2021.  Plaintiff did not appeal it, and he claims he did not receive the letter.

On May 4, 2021, Plaintiff bid for and received a full-time position.  Until his 2021 bid into a full-time Article 22.3 position, Plaintiff was a part-time employee.  Of the 216 available inside positions at North James Street, only eighteen are full-time Article 22.3 positions.

## III.    Discussion

Plaintiff asserts four claims: (1) hybrid breach of contract, (2) race discrimination, (3) hostile work environment/harassment, and (4) retaliation.  Defendant contends that the Court lacks subject matter jurisdiction under the *Garmon* doctrine because analysis of the CBA and unfair labor practices are at the core of all Plaintiff's claims.  In addition, Defendant asserts that if the Court finds that it has jurisdiction, Plaintiff fails to establish any of his claims.  The Court will address each claim in turn.

### A.    *Garmon* Doctrine

Defendant asserts that all of Plaintiff's claims directly relate to his rights under the CBA and thus his claims are preempted by the *Garmon* doctrine.  Under the preemption doctrine articulated in *San Diego Building Trades Council v. Garmon*, "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board."[30]  Preemption under *Garmon* is broad.[31]  It "applies when the 'controversy presented to the [] court is identical to . . . that which could have been, but was not, presented to the Labor Board.'"[32]  "It is a

---

[30] 359 U.S. 236, 245 (1959).

[31] *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. ---, 143 S. Ct. 1404, 1411 (2023).

[32] *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1165–66 (10th Cir. 2004) (quoting *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978)).

reflection of Congress's decision to vest exclusive jurisdiction in the NLRB.  If it applies, neither a federal court nor a state court has jurisdiction; the case must be adjudicated by the NLRB."[33] Section 8 of the Act "prohibits employers and unions from engaging in certain 'unfair labor practice[s]'"[34] such as "discharg[ing] or otherwise discriminat[ing] against an employee because he has filed charges."[35]

In this case, the question is whether Plaintiff's claims arise under § 8 of the NLRA. Defendant contends that they do because Plaintiff's claims allege retaliation and/or discrimination against him for filing grievances and/or NLRB charges.  Specifically, Defendant states that Plaintiff's claims relate to his inability to file a grievance, his inability to exercise his seniority rights, another employee's assignment to a job that he believed he deserved and was entitled to due to seniority, grievances filed in 2020, and alleged adverse actions due to grievances filed.  Defendant also contends that interpretation of the CBA is fundamental to each of Plaintiff's claims.

Plaintiff asserts that his claims center on conduct relating to his race and that the Union failed to hear his grievances.  He also inexplicably asserts that he did not avail himself to the grievance process while stating that he filed multiple grievances.  Plaintiff further contends that his claims fall outside any interpretation of the CBA while at the same time stating that the Defendant did not follow the grievance procedures or procedures for bidding jobs set forth in the CBA.

---

[33] *Ballou v. United Parcel Serv., Inc.*, No. 20-2640-JWB, 2023 WL 130542, at *5 (D. Kan. Jan. 9, 2023) (citing *Felix*, 387 F.3d at 1166).

[34] *Glacier Northwest*, 143 S. Ct. at 1410; 29 U.S.C. § 158(a)–(b).

[35] 29 U.S.C. § 158(a)(4).

Here, the Court concludes that the majority of Plaintiff's claims relate to allegedly unfair labor practices by Defendant based on Plaintiff filing grievances. His race discrimination, retaliation, and hostile work environment claims are substantively based on either grievances Plaintiff filed in 2015 or a grievance filed by Plaintiff in January 2020 in which he complained that Defendant attempted to re-assign his damage clerk position to another individual (also African American). Plaintiff claims that by March and April 2020, he had experienced many instances of retaliation and harassment. To the extent that Plaintiff's claims are premised on discriminatory labor practices based on filing grievances, they are preempted by the *Garmon* doctrine. The Court, however, will address Plaintiff's claims below to the extent that he contends Defendant's actions are based on race.

As to Plaintiff's hybrid breach of contract claim, Defendant contends that Plaintiff is alleging that Defendant breached the contract as retaliation *because* Plaintiff filed grievances. Thus, Defendant contends that Plaintiff is really alleging an unfair labor practice under the NLRA, which is preempted by *Garmon*. The Court will not limit Plaintiff's claim to that extent. Although that may be *one* reading of Plaintiff's breach of contract claim, Plaintiff adequately asserts a hybrid breach of contract under § 301 of the Labor Management Relations Act ("LMRA"). And § 301 specifically provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties."[36] Accordingly, the Court proceeds to address Plaintiff's hybrid breach of contract claim.

---

[36] 29 U.S.C. § 185(a).

### B.  Hybrid Breach of Contract Claim

Plaintiff brings a hybrid breach of contract claim under § 301 of the LMRA.  A hybrid breach of contract claim is when "a plaintiff may seek judicial enforcement of his contractual right if he can prove that the Union, as bargaining agent, breached its duty of fair representation in handling his grievance, thereby frustrating his attempts to vindicate [a contractual remedy]."[37] A hybrid suit

> combines two conceptually independent causes of action, the first against the company for breach of the contract (a standard § 301 claim) and the second against the union for breach of the duty of fair representation (a claim implied by operation of a union's status under federal law as the sole bargaining representative of the employee).[38]

"[A]n employee's unfair representation claim against his union and the underlying § 301 claim against his employer are 'inextricably interdependent.'"[39]  "The 'hybrid' suit is a judicially created exception to the general rule that an employee is bound by the result of the grievance or arbitration remedial procedures provided in a collective-bargaining agreement."[40]

To prevail under this hybrid action, the employee must prove "(1) [s]ome conduct by the worker's union that breached the duty of fair representation; (2) [a] causal connection showing that the union's breach affected the integrity of the arbitration process, and; (3) [a] violation of the collective bargaining agreement by the company."[41]  Although a plaintiff "need not sue both

---

[37] *Valdivia v. Ohse Foods, Inc.*, 820 F. Supp. 574, 580 (D. Kan. 1993) (citing *Vaca v. Sipes*, 386 U.S. 171, 186 (1967)).

[38] *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998).

[39] *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1051 (10th Cir. 1995) (citing *DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151, 164–65 (1983)).

[40] *Hartwick v. Dist. Lodge 70*, 184 F. Supp. 2d 1092, 1099 (D. Kan. 2001) (quoting *Edwards v. Int'l Union, UPGWA*, 46 F.3d 1047, 1051 (10th Cir. 1995)).

[41] *Webb*, 155 F.3d at 1239 (citing *Hines v. Anchor Motor Freight*, 424 U.S. 554, 568 (1976)).

his union and former employer in the same case," a plaintiff still must prove all elements.[42]  The

statute of limitations for a hybrid § 301 action is six months.[43]

The parties agree that Plaintiff's hybrid breach of contract claims are limited to the six-

month period prior to him filing suit.  Thus, he is limited to breaches occurring after March 17,

2020.  Plaintiff claims that his grievances from April 24, 2020 and June 3, 2020 are timely.[44]

On April 24, 2020, Plaintiff filed a grievance stating that he should have been awarded a

full-time job earlier based on the work he believed he had been performing for the past five

years.  On June 3, 2020, he filed a grievance stating that after he returned from Safety

Committee, he was not allowed to drive the pito cart and was not allowed to have a union

steward dispute the problem.  As to these two grievances, he must establish that the Union

breached its duty of fair representation and Defendant breached the CBA.  He fails to do either.

Plaintiff first cannot establish that the Union breached its duty of fair representation.

"The duty of fair representation *is* breached when the union's handling of a grievance falls 'so

far outside a wide range of reasonableness as to be irrational.'"[45]  "[A] member's mere

dissatisfaction with a union representative's sub-par performance is not enough to establish a

---

[42] *Id.* (citing *DelCostello*, 462 U.S. at 165); *Carlton v. Local No. 7 United Food & Commercial Workers Int'l Union,* 43 F. App'x 289, 294 (10th Cir. 2002) (noting that in hybrid actions that "the plaintiff must prove both that the union breached its duty of fair representation and that the employer discharged the plaintiff in violation of its collective bargaining agreement with the union.").

[43] *Edwards*, 46 F.3d at 1050–51.

[44] As noted above, Plaintiff did not specifically direct the Court to these grievances.  Plaintiff also states in his briefing that he filed thirteen grievances between October 12, 2020 and November 23, 2020 regarding his seniority rights.  Not only do these alleged grievances occur *after* he filed this lawsuit, but Plaintiff does not direct the Court to the record for these grievances and fails to explain the relevance of them.

[45] *Menges v. ABF Freight Sys., Inc.*, 385 F. App'x 814, 818 (10th Cir. 2010) (quoting *Schwartz v. Bhd. of Maint. of Way Emp'ees*, 264 F.3d 1181, 1185 (10th Cir. 2001)).

duty of fair representation claim.  'Mere negligence, poor judgment, or ineptitude in grievance handling are insufficient to establish a breach of the duty of fair representation.'"[46]

Here, Plaintiff cannot demonstrate that the Union breached its duty of fair representation on these grievances.  First, Plaintiff's citations to the record do not support his contentions.  He does not direct the Court to any evidence that the Union did not represent Plaintiff fairly.[47] Although Plaintiff testifies that he believes the Union breached its duty, he does not provide the Court with any objective evidence that the Union's conduct was unreasonable.

In addition, the evidence in the record contradicts Plaintiff's allegations as to the April and June 2020 grievances.  The NLRB's February 11, 2021 dismissal letter states that the Union filed a grievance on Plaintiff's behalf in April 2020 but withdrew it because it found no merit because Defendant retained the discretion to rebid the positions.  Although Plaintiff disagrees with the Union's withdrawal of the grievance, the Union did file a grievance on his behalf and ultimately withdrew it based on its interpretation of the employment situation.  As noted above, mere dissatisfaction with the Union's performance does not establish a breach of the duty of fair representation.

As to the June 2020 grievance regarding the right to drive the pito cart, the NLRB dismissal letter states that the Union filed a grievance on Plaintiff's behalf.  It also states that the Union was successful in allowing Plaintiff to operate the pito cart, but the Union did not grieve the discipline Plaintiff received when he failed to follow a supervisor's instructions.  Again, this letter shows that the Union advocated on Plaintiff's behalf (and was successful as to certain items) but did not pursue an instance in which Plaintiff failed to follow his supervisor's

---

[46] *Id.* (quoting *Young v. UAW-LETC*, 95 F.3d 992, 997 (10th Cir. 1996)).

[47] Defendant points out that Plaintiff did not depose any of the individuals he contends were responsible for denying or withdrawing his grievances or NLRB charges.

instructions.  Plaintiff cannot demonstrate that the Union's actions fell outside any rational reasonableness.  Thus, he cannot demonstrate that the Union breached its duty of fair representation.[48]

Furthermore, Plaintiff cannot establish that Defendant breached the CBA.  Plaintiff does not identify *any* contractual provision that Defendant breached as he does not even discuss the CBA.  Thus, he fails to direct the Court to any evidence that Defendant violated the CBA.  Accordingly, Plaintiff cannot establish his hybrid § 301 breach of contract claim, and Defendant is entitled to summary judgment.

### C.  Race Discrimination

Plaintiff asserts a race discrimination claim alleging that Defendant failed to discipline Plaintiff's white co-workers who engaged in the same activity as Plaintiff and that Defendant gave preferential treatment to white co-workers who had less seniority than him.[49]  He states that Defendant engaged in this activity because Plaintiff had filed grievances against Defendant.  His claim fails.

First, as noted above, Plaintiff's claim is preempted by the *Garmon* doctrine because his allegations relate to unfair labor practices based on the filing of grievances and/or charges.  To the extent that Plaintiff's claim is not preempted, he abandoned it.  "[W]hen a party fails to respond to arguments made to support a motion for summary judgment, the party, in effect, abandons that claim."[50]  In Plaintiff's response to Defendant's motion for summary judgment, he does not specifically address Defendant's race discrimination argument but instead states *in a*

---

[48] To the extent that Plaintiff relies on any 2015 grievances, these breaches are untimely.

[49] Pretrial Order, Doc. 119 at 22.

[50] *McCants v. Correct Care Sols., LLC*, No. 16-2787-DDC, 2018 WL 2445157, at *5 (D. Kan. May 31, 2018) (citing *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001)).

*footnote* that he maintains his race discrimination claim and complains that he was treated differently.  Plaintiff's response is insufficient.  Accordingly, Plaintiff's race discrimination claim fails, and Defendant is entitled to summary judgment on this claim.

### D.  Hostile Work Environment/Harassment

Plaintiff alleges that he was subject to a hostile work environment/harassment. Defendant contends that Plaintiff cannot establish such a claim because there is no evidence supporting it.  A hostile work environment claim requires evidence that

> (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic (in this case, race); and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.[51]

With regard to the final element, a workplace must be "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.[52]  The Court considers the work environment both subjectively and objectively.[53]  It requires consideration of "the conduct's frequency and severity; 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and whether it unreasonably interferes with the plaintiff employee's work performance."[54]

Here, Plaintiff contends that following his January 2020 complaint and grievances regarding Ceesay's attempt to re-assign Plaintiff's damage clerk position to another individual,

---

[51] *Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014) (citing *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262–63 (10th Cir. 2005)).

[52] *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)).

[53] *Id.* (citing *Herrera*, 474 F.3d at 680).

[54] *Id.* (quoting *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir.2007)).

Defendant's management began to harass him.  He asserts that in April 2020, Mike Bayers denied Plaintiff the ability to exercise his seniority or the grievance process, ordered other people to participate in harassment, and permitted other white employees to use their seniority.  This claim is without merit.

First, Plaintiff's contentions are unsupported by the record.  Second, this claim is preempted by the *Garmon* doctrine because his allegations relate to unfair labor practices based on the filing of grievances and/or charges.  Third, there is *no* evidence that Defendant's conduct was related to Plaintiff's race in any way.  Other than alleging that Defendant allowed other white employees to use their seniority a few times (which is not supported by the record), Plaintiff does not identify any evidence that Plaintiff's race played a part in any of Defendant's decisions.  Finally, Plaintiff does not identify any harassment that was severe or pervasive that created an abusive working environment.  Thus, Plaintiff cannot establish a hostile work environment/harassment claim.

### E.  Retaliation

Finally, Plaintiff brings a retaliation claim.  To establish a prima facie case of retaliation, a plaintiff must present evidence that (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse action that a reasonable employee would have found material; and (3) a causal connection exists between the protected activity and the materially adverse action.[55]

Defendant first contends that the only evidence of protected activity in the record is Plaintiff's May 14, 2020 internal complaint to Defendant of alleged race discrimination and Plaintiff's May 18, 2020 EEOC charge alleging race discrimination.  Plaintiff argues that

---

[55] *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (citing *EEOC v. PVNF, L.L.C,* 487 F.3d 790, 803 (10th Cir. 2007)).

Defendant is inaccurate.  He claims that he filed a grievance and internal complaints regarding Defendant's discrimination in handling and removing him from his damage clerk bid job between January and March 2020.  Plaintiff's complaints regarding discriminatory treatment related to the seniority and handling of his damage clerk job, however, are not protected activity for purposes of his Title VII retaliation claim.  There are neither allegations nor any evidence that he complained about race, or that race was a factor, in Defendant's alleged discrimination in handling his job between January and March 2020.  Indeed, Plaintiff contends that Defendant placed an African American employee in Plaintiff's position.  Thus, Plaintiff's only protected activity, for purposes of his Title VII retaliation claim, is his May 14, 2020 internal complaint and his May 18, 2020 EEOC charge.[56]

Because Plaintiff's protected activity occurred in May 2020, Plaintiff must identify materially adverse actions after that date.  He fails to do so.  Instead, he primarily discusses incidents occurring in March and April 2020, which are not relevant because they occurred prior to his protected activity.  Furthermore, those allegations are not supported by Plaintiff's citations to the record.  As to the allegations of adverse actions occurring after May 14, 2020, most of Plaintiff's allegations are again not supported by the record.  For instance, Plaintiff does not adequately cite to the record to provide support for his contention that beginning in May 2020, Bayers blocked Plaintiff from using his seniority rights.  And to the extent that the evidence shows that Plaintiff was prevented from using the pito cart and that he got into a disagreement with Jayden Williamson about the pito cart, these are not materially adverse actions.  An action is *materially* adverse if "it well might have dissuaded a reasonable worker from making or

---

[56] To the extent that Plaintiff alleges retaliation against him based on the filing of his grievances, the *Garmon* doctrine would preempt this claim.

supporting a charge of discrimination."[57]  These alleged incidents are not.  Thus, Plaintiff's

retaliation claim fails, and Defendant is entitled to summary judgment on this claim.

In sum, Defendant is entitled to summary judgment on all of Plaintiff's claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for

Summary Judgment (Doc. 123) is **granted**.  To the extent that Plaintiff's claims are preempted

by the *Garmon* doctrine, they are dismissed without prejudice.  To the extent that Plaintiff's

claims are not preempted by the *Garmon* doctrine, and the Court addressed them substantively,

they are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: July 20, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[57] *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).