IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEVIN R. STEWART,
    Plaintiff,

vs.

Case No. 2:20-cv-02461-JAR

UNITED PARCEL SERVICES, INC.,
    Defendant.

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTIONS FOR ATTORNEY FEES AND COSTS

Petitioner Kevin R. Stewart opposes the defendant's request for an award of nearly $240,000 in attorney fees. The Court should deny it. UPS's motion fails to show Mr. Stewart's claims were "frivolous, unreasonable, or groundless." *Christianburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 422 (1978). He also disputes part of the costs award UPS request.

### Argument

**I.  A prevailing defendant in a Title VII action may recover attorney fees from the plaintiff only when the plaintiff's case was frivolous, unreasonable, or without foundation, and an erroneous award of fees in a defendant's favor is reversible error.**

Title VII authorizes "prevailing part[ies]" to recover "reasonable attorney's fees" from the opposing party at the district court's discretion, but does not explain how that discretion should be exercised. 42 U.S.C. § 2000e-5(k). In *Christianburg*, the Supreme Court explained that when a defendant is the prevailing party, the plaintiff should not be ordered to pay attorney fees unless his or her suit was "frivolous, unreasonable, or without foundation[.]" 434 U.S. at 421. "A frivolous suit is one 'based on an indisputably meritless legal theory, ... [or] whose factual contentions are clearly baseless.'" *Thorpe v. Ancell*, 367 F. App'x 914, 919 (10th Cir. 2010) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). "Dismissal of claims

1

at the … summary judgment stage does not automatically warrant a fee award." *Id.* at 920.

In *Christianburg*, the Court warned district courts should "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." 434 U.S. at 421-22. This plaintiff-friendly standard protects parties by considering that although "the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at 422. So, "[r]arely will a case be sufficiently frivolous to justify imposing attorneys' fees on the plaintiff." *Thorpe*, 367 Fed.Appx. at 920.

UPS cites a handful of district court decisions dating back to 1984 in which prevailing Title VII defendants received attorney fee awards (Doc. 150 at 7-8) (citing *Miller v. Mgmt. & Training Corp.*, 2021 WL 4437596 (S.D. Miss. Sept. 27, 2021; *Brownlow v. Gen. Servs. Emps. Union*, 1984 WL 1147 (N.D. Ill. July 9, 1984); *Barber v. Am. Sec. Bank*, 1989 WL 7339 (D.D.C. Jan. 18, 1989)). But far more recently, Circuit Courts across the country have reversed such awards.

In *Equal Emp. Opportunity Comm'n v. W. Customer Mgmt. Grp., LLC*, 678 F. App'x 836 (11th Cir. 2017), the E.E.O.C. filed a complaint against a company on behalf of a job applicant the company previously rejected, alleging race discrimination claims. *Id.* at 837-38. A jury found the company not liable and the district court awarded it attorney fees. *Id.* at 838. The Eleventh Circuit reversed the award because "[t]he EEOC's case was not 'so patently devoid of merit' as to justify an attorney's fee award – the case 'merited careful review.'" *Id.* at 839 (quoting *Walker v. NationsBank*, 53 F.3d 1548, 1559 (11th Cir. 1995)). The Third and Seventh Circuits have reached similar results in other E.E.O.C. cases. *See Equal Emp. Opportunity Comm'n v. L.B. Foster Co.*, 123 F.3d 746, 752-56 (3d Cir.

2

1997) (reversing attorney fee award to prevailing defendant after a bench trial on sex discrimination and retaliation claims because claims were not "frivolous merely because the court … rejected the EEOC's evidence"); *Equal Emp. Opportunity Comm'n v. CVS Pharmacy, Inc.*, 907 F.3d 968, 974 (7th Cir. 2018) (attorney fee award reversed where claims denied in summary judgment by "a purely legal, procedural" defense was not frivolous because the defense did not "squarely block[]" the claims under any "controlling and unambiguous precedent") (internal quotation marks and citations omitted).

In *Lezama v. Clark Cnty.*, 817 F. App'x 341 (9th Cir. 2020), a plaintiff filed an array of claims under Title VII and the Americans with Disabilities Act alleging discrimination, wrongful termination, failure to accommodate, and retaliation. *Id.* at 344. The employer successfully moved for summary judgment and the district court awarded it over $111,000 in attorney fees. *Id.* The Ninth Circuit vacated the attorney fees award, concluding the mere fact of the employer's summary judgment victory alone did not render the plaintiff's claims "frivolous, unreasonable, or without foundation." *Id.* at 346.

The Tenth Circuit also has reversed attorney fee awards under this standard. In *Utah Women's Clinic, Inc. v. Leavitt*, 136 F.3d 707 (10th Cir. 1998), a plaintiff sued to challenge the constitutionality of a newly-enacted abortion restriction closely modeled after restrictions the Supreme Court upheld in *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992). *Leavitt*, 136 F.3d at 708. The district court dismissed the case and ordered the plaintiff to pay the defendant's attorney fees, concluding the plaintiff had raised a frivolous claim under *Casey*. *Id.* The Tenth Circuit reversed that award, noting that *Casey* left open the possibility of future

3

challenges to other informed consent restrictions, so the plaintiff's case was not frivolous, even if the district court dismissed it. *Id.* at 709.[1]

So, as these decisions explain, a prevailing defendant should only be awarded attorney fees when the plaintiff's case is factually baseless or "controlling and unambiguous precedent" precludes it. *CVS Pharmacy*, 907 F.3d at 974. As Mr. Stewart explains here, UPS does not and cannot meet this standard.

## II. Mr. Stewart's claims were not frivolous.

UPS argues it is entitled to attorney fees because "[a]ll Plaintiff's claims have been frivolous from the minute he filed this case," but only requests such fees from August 31, 2022 onward, one day after it sent Mr. Stewart a letter explaining why it believed the claims meritless (Doc. 150 at 13). UPS is wrong. Even under the Court's summary judgment, Mr. Stewart's claims were not "so patently devoid of merit" that this Court should grant UPS any attorney fees.

### A. Prior attorney withdrawals have no bearing on the frivolity of Mr. Stewart's claims.

First, UPS argues Mr. Stewart should pay its attorney fees because his "first two attorneys withdrew due to strategic differences with" him (Doc. 150 at 10). But UPS also recognizes that "this fact alone does not necessitate attorneys' fees" (Doc. 150 at 10). UPS is correct. It cites no authority holding a plaintiff's prior attorney's withdrawal from representation is relevant to the frivolity analysis, but asks this Court to consider that fact anyway.

That Mr. Stewart's prior attorneys decided to withdraw from the case has no bearing on the substance of his claims. UPS cites no authority considering this as a

---

[1] While *Leavitt* was not a Title VII case, the same standard for granting defendant attorney fee awards applied. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983) (implementing *Christianburg*'s defendant attorney fees standard to civil rights cases).

4

factor in the frivolity determination because there is none.  This Court should not consider the withdrawals when considering UPS's request for attorney fees.

### B. This Court did not agree with UPS's August 2022 assessment of Mr. Stewart's L.M.R.A. § 301 claim, so it cannot be frivolous for that reason.

UPS argues it should receive attorney fees from August 31, 2022 on, one day after it sent Mr. Stewart's then-counsel a letter explaining why UPS believed his claims were frivolous and demanding he dismiss them (Doc. 150 at 10-11; Doc. 150-3).  While UPS correctly notes an award of a defendant's attorney fees are appropriate when "the plaintiff continued to litigate after [the case] clearly became" frivolous Doc. 150 at 7) (quoting *Equal Emp. Opportunity Comm'n v. TriCore Reference Labs.*, 493 F. App'x 955, 960-61 (10th Cir. 2012)), it wrongly concludes its assessment of the frivolity of Mr. Stewart's case is decisive.

In its August 2022 letter, UPS explained it considered Mr. Stewart's hybrid L.M.R.A. § 301 claim frivolous because each of Mr. Stewart's grievances dating back to 2009 were resolved and the N.L.R.B. already had denied his claim before he filed suit (Doc. 150-3 at 3).  Neither of these facts rendered Mr. Stewart's claim useless.

First, UPS's letter stated Mr. Stewart wrongly claimed UPS failed to take action on his grievances, when in fact all of his grievances dating back to October 2009 were either withdrawn, settled, or denied, including 72 resolved in UPS' favor on September 17, 2015 (Doc. 150-3 at 3).  UPS argues this somehow renders his entire hybrid L.M.R.A. § 301 frivolous (Doc. 150 at 10-11; Doc. 150-3 at 5).  This argument cannot be reconciled with UPS's own summary judgment motion.

In its motion for summary judgment, UPS argued a six-month statute of limitations applied to Mr. Stewart's claim, so the Court could only consider grievances filed after March 17, 2020 (Doc. 124 at 20-21).  Mr. Stewart agreed, so the Court only considered grievances he filed in April and June 2020 (Doc. 133 at

5

16-18). UPS cannot now reverse course and point to a slew of grievances both parties agreed was outside the scope of Mr. Stewart's claim and argue they are evidence of frivolity. These prior grievances alone are insufficient to show Mr. Stewart's § 301 claim was frivolous.

UPS's August 2022 letter also explained it considered Mr. Stewart's § 301 claim frivolous because the N.L.R.B. already concluded UPS did not breach the C.B.A. before Mr. Stewart filed his suit (Doc. 150-3 at 3). UPS is wrong. As this Court specifically concluded, the N.L.R.B.'s decision on Mr. Stewart's § 301 claim did not control because the N.L.R.A. did *not* preempt it despite UPS's argument otherwise (Doc. 133 at 14). While the Court considered the N.L.R.B.'s dismissal in its merits analysis of Mr. Stewart's claim, it by no means treated that determination as the conclusive block that UPS's demand letter suggested it was (Doc. 133 at 14).

UPS cites a 1989 decision from the District of the District of Columbia where the court awarded a defendant attorney fees because of the "complete lack of evidentiary support" for the plaintiff's claims "coupled with the prior agency adjudications" (Doc. 150 at 12) (quoting *Barber v. Am. Sec. Bank*, No. 86-1156, 1989 WL 7339 at *3 (D.D.C. Jan. 18, 1989). UPS is wrong because Mr. Stewart's claim bears no resemblance to the plaintiff's claim in that case.

In *Barber*, the plaintiff filed charges against his employer with the E.E.O.C. alleging multifaceted discrimination claims. 1989 WL 7339 at *1. The employer fired him following a poor performance evaluation seven months after he filed the charges, which led him to file another complaint with the E.E.O.C. *Id.* He also filed for unemployment benefits with a local agency, which denied the request after holding an evidentiary hearing, concluding the employer fired the plaintiff for cause. *Id.* The E.E.O.C. also found his complaints meritless. *Id.* The plaintiff then

sued the employer, who successfully moved for summary judgment with the district court concluding the plaintiff's claims were "wholly meritless." *Id.*

The defendant moved for attorney fees, arguing the plaintiff's case was frivolous in part because "federal courts must give state agency findings preclusive effect under § 1981 when the agency acts in a judicial capacity in resolving disputed issues of fact," and the state agency had already adjudicated the plaintiff's claims. *Id.* at *2. Moreover, the plaintiff admitted the employer never referenced his race at all, so he effectively had no evidence to support his own discrimination claim. *Id.*

*Barber* is nothing like Mr. Stewart's case. The N.L.R.B. did not adjudicate Mr. Stewart's § 301 claim "in a judicial capacity" and so its dismissal had no definitive preclusive effect. *Id.* As explained above, this Court reached the merits of the claim despite UPS's summary judgment argument that the N.L.R.A. preempted it (Doc. 133 at 14).

Moreover, *Barber* has no legal effect. It is a 1989 magistrate judge's report and recommendation on a motion for attorney fees. UPS cites no subsequent decision by the district court adopting that report and those recommendations, and Mr. Stewart has not found any in his own research. Absent any indication of how the district court acted on the magistrate's recommendations, they should not be considered precedent in this case. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976) ("The magistrate may do no more than propose a recommendation" which the law gives no "presumptive weight. … The authority and the responsibility to make an informed, final determination, we emphasize, remains with the judge").

Mr. Stewart exercised his right to challenge UPS's alleged noncompliance with the C.B.A. in this Court. While the Court ultimately did not agree with him, dismissal in summary judgment alone is insufficient to warrant UPS's request for attorney fees on this claim. *Thorpe*, 367 F. App'x at 920. UPS's motion and August 2022 demand letter fail to explain how Mr. Stewart's § 301 claim was based on an

7

"indisputably meritless legal theory," as it is required to do to prove frivolity. *Id.* at 919. The claim was not frivolous, and this Court should not award UPS any attorney fees for work related to it.

**C. Mr. Stewart had a good faith belief based on legal precedent that *Garmon* did not preempt his Title VII claims, so they were not frivolous.**

Next, UPS argues Mr. Stewart's Title VII claims were frivolous because the Court concluded *Garmon* preempted them (Doc. 150 at 12). UPS is wrong because its *Garmon* defense was not "indisputably" meritorious. *Thorpe*, 367 F. App'x. at 920.

As this Court explained in its summary judgment ruling, *Garmon* preemption bars federal court consideration of issues "arguably subject to § 7 or § 8 of the [National Labor Relations] Act" (Doc. 133 at 12) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959)). Section 8 of the N.L.R.A. "prohibits employers and unions from engaging in certain 'unfair labor practice[s]' such as 'discharg[ing] or otherwise discriminat[ing] against an employee because he has filed charges'" (Doc. 133 at 13) (quoting *Glacier N.W., Inc. v. Int'l Bhd. Of Teamsters Loc. Union No. 174*, 143 S.Ct. 1404, 1410 (2023)).

Mr. Stewart alleged race discrimination, harassment/hostile work environment, and retaliation claims under Title VII (Doc. 61 at 10-15). UPS argued, and this Court concluded, the N.L.R.A. preempted those claims because they "allege retaliation and/or discrimination against him for filing grievances and/or N.L.R.B. charges" (Doc. 133 at 13). However, it is far from settled law that Title VII cases are categorically preempted, so Mr. Stewart's claims accordingly were not frivolous. Indeed, the Supreme Court itself suggests so.

In *Breininger v. Sheet Metal Workers Int'l. Ass'n Local Union No. 6*, 493 U.S. 67 (1989), an employee alleged his union violated its duty of fair representation and

8

improperly disciplined him for political opposition. *Id.* at 72. The district and appellate courts concluded the N.L.R.B. had exclusive jurisdiction over the claims. *Id.* The Supreme Court reversed, holding "[t]hat such a breach of the duty of fair representation might also be an unfair labor practice is thus not enough to deprive a federal court of jurisdiction over the fair representation claim." *Id.* at 75. It explained this was so notwithstanding *Garmon*'s holding that "neither state nor federal courts possess jurisdiction over claims based on activity that is 'arguably' subject to §§ 7 or 8 of the N.L.R.A." *Id.* at 74 (quoting *Garmon*, 359 U.S. at 245). If *Garmon* does not bar an employee's federal complaints directly against his union, Mr. Stewart surely had a good faith basis to believe his complaints directly against UPS would survive as well.

Moreover, no Tenth Circuit decision ever has extended *Garmon* like the Court did here. In fact, at least one circuit has expressly declined to require Title VII claims be brought under the N.L.R.B. *See Guerra v. Manchester Terminal Corp.*, 498 F.2d 641, 658 n.46 (5th Cir. 1974) ("[A] plaintiff does not lose his right to an adjudication regarding the causes of action created by Title VII or § 1981 simply because the conduct of which he complains also offends section 8 of the N.L.R.A."), *overruled on other grounds by Bhandari v. First Nat'l Bank of Commerce*, 829 F.2d 1343 (5th Cir. 1987); *see also Lupiani v. Wal-Mart Stores, Inc.*, 435 F.3d 842, 846 (8th Cir. 2006) (collecting cases declining to extend *Garmon* to federal statutory claims, including *Breininger*, and holding *Garmon* does not apply to E.R.I.S.A. claims).

Given this trend in *Garmon* jurisprudence, Mr. Stewart brought his Title VII claims in good faith that the N.L.R.B.'s determinations did not bar him from asserting them in federal court. It can hardly be said the law was so clear on *Garmon* and Title VII that his claims were based on a "meritless legal theory[.]" *Thorpe*, 367 F. App'x at 919; *see also Crabtree v. Muchmore*, 904 F.2d 1475, 1477

9

(10th Cir. 1990) (affirming the grant of attorney fees in favor of a defendant judge in a civil rights action where the plaintiff's frivolous claim was obviously barred by the judge's absolute immunity).

**D. Mr. Stewart's claims were not so factually baseless as to be frivolous.**

Next, UPS's letter stated it believed "Mr. Stewart Cannot Show a *Prima Facie* Case of Discrimination" (Doc. 150-3 at 4). It said Mr. Stewart's retaliation claim failed because "the fact that he did not get the job he wanted is, alone, not enough to rise to the level of an adverse employment action" (Doc. 150-3 at 4). UPS claimed "Mr. Stewart cannot show any adverse action taken against him … based on any protected characteristic that caused a significant change in benefits" (Doc. 150-3 at 3). The letter made no mention of Mr. Stewart's hostile work environment/harassment claim.

This Court's judgment hardly resembled UPS's analysis. It denied Mr. Stewart's race discrimination claim based on *Garmon* and a finding Mr. Stewart abandoned the claim (Doc. 133 at 18-19). It denied his hostile work environment/harassment claim because of *Garmon* and its finding that Mr. Stewart "does not identify any evidence that [his] race played a part in any of [UPS]'s decisions" or "identify any harassment that was severe or persuasive that created an abusive working environment" (Doc. 133 at 19-20).

UPS's letter does not predict any of these findings or conclusions, so it cannot be grounds for declaring Mr. Stewart's awareness of these claims' frivolity. The same is true for the letter's analysis of Mr. Stewart's retaliation claim. This Court did not resolve that claim on the grounds UPS predicted in its letter. Instead, while also concluding it was preempted under *Garmon*, it held the UPS actions Mr. Stewart identified occurring after May 2020 were not "materially adverse" enough to warrant relief (Doc. 133 at 21-22). The Court makes no mention of the full-time position Mr. Stewart alleged he was passed over for as a basis for his claim, which

was UPS's entire argument for the retaliation claim's frivolity in its letter (Doc. 150-3 at 4).

While the Court did not agree with Mr. Stewart's assessment of the law and the facts, it apparently did not entirely agree with UPS's either. UPS's entire motion rests on the assumption that "once UPS sent [Mr. Stewart's then-counsel] the Letter outlining the law on the subject, this claim became frivolous" (Doc. 150 at 14). But as Mr. Stewart has shown here, this Court did not resolve the merits of any of his Title VII claims on the grounds UPS set forth in its letter. The letter is not grounds to declare Mr. Stewart's case frivolous and grant attorney fees.

**III.   UPS is not entitled to mediation expenses as part of its litigation costs.**

UPS also requests $5,527.40 in costs from Mr. Stewart under Fed. R. Civ. P. 54(d)(1) (Doc. 154). Mr. Stewart agrees it is entitled to costs under that rule, but disputes the amount. Specifically, UPS requests $600 for mediation expenses (Doc. 154). Because this is not a cost to which UPS is entitled under federal law, this Court should decline to include it in the costs taxed against Mr. Stewart.

"The Supreme Court has indicated that federal courts may only award those costs articulated in [28 U.S.C. §] 1920 absent explicit statutory or contractual authorization to the contrary." *Mota v. Univ. of Tx. Houston Health Sci. Cent.*, 261 F.3d 512, 529 (5th Cir. 2001) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987)). Section 1920 explicitly enumerates six specific types of costs a district court may tax against a losing party, none of which are a provision allowing for mediation expenses. For this reason, the Fifth and Ninth Circuits have explicitly held district courts may not tax mediation expenses as costs. *Cook Children's Med. Cent. v. New Eng. PPO Plan of Gen. Consol. Mgmt., Inc.*, 491 F.3d 266, 274-77 (5th Cir. 2007); *Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1061 (9th Cir. 2001).

Section 1920 plainly does not permit UPS to recover its mediation expenses. This Court should omit UPS's requested $600 in mediation expenses from any award of costs.

IV.   **Conclusion**

UPS's motion fails to explain why this Court should order a "rare[]" award of defendant's attorney fees.  *Thorpe*, 367 Fed.Appx. at 920.  It relies entirely on a demand letter it sent Mr. Stewart outlining the reasons it believed the case the was frivolous, but this Court disagreed with at least some of those reasons in its final judgment and decided the merits of Mr. Stewart's claims on other facts.  Moreover, the *Garmon* doctrine that UPS and this Court's judgment relies on was not law so set in stone that Mr. Stewart should have known it rendered his claims meritless.  This Court should deny UPS's motion for attorney fees in its entirety.

UPS also improperly requests mediation expenses as costs this Court is statutorily barred from rewarding.  The Court should omit those expenses from any award of costs.

Respectfully submitted,

*Jonathan Sternberg, Attorney, P.C.*

by /s/Jonathan Sternberg
   Jonathan Sternberg, Kan. #25902
   Brody Sabor, Kan. #29643
   2323 Grand Boulevard #1100
   Kansas City, Missouri 64108
   (816) 292-7020
   jonathan@sternberg-law.com
   brody@sternberg-law.com

Certificate of Service

I certify that on September 27, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of that filing to Mr. Colin J. Finnegan and Ms. Shelley I. Ericsson, Ogletree,

Deakins, Nash, Smoak & Stewart PC, 700 West 47th Street, Suite 500, Kansas City, Missouri 64112, counsel for the defendant.

<u>/s/Jonathan Sternberg</u>
Attorney